## Buford *vs* Brown, &c.

APPEAL FROM THE NELSON CIRCUIT.

*Rescission of contracts. Fraud. Jurisdiction.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

*Case 125.*
6bm553
106  155

*June.* 25.

THIS was a bill in chancery exhibited by the appellees, praying to be relieved against two judgments at law, which the appellant, Buford, had recovered against them.

The Court below granted the relief sought, perpetually enjoining both judgments, and Buford has appealed to this Court.

Case stated in the bill.

The appellees, complainants below, based their claim for relief upon the ground that the notes, upon which the judgments in contest were rendered, were given for two blooded *fillies*, which had been sold by Buford, the defendant, to three of the complainants and one Jacob J. Truax, Brown, the other complainant, having been a surety upon the notes; that the defendant had cheated and defrauded them in the sale, by fraudulent misrepresentations and concealment in regard to the blood or pedigrees of said fillies; and that as soon as they were fully satisfi-

ed of the fraud practised upon them, and that the fillies were not of perfect and thorough blood, as represented, they had offered to return them to the defendant, and also tendered a rescission of the contract, to which he refused to accede.

Defendant's answer.

Buford, in his answer, denies all the allegations of fraud, and avers that when he sold the fillies he gave the purchasers their pedigrees, as far as within his knowledge, and which he again sets forth in his answer. He denies that the purchasers had made any complaint in regard to their blood, till racing stock had fallen in the country and pay day had arrived.

Whether a Court of Equity had jurisdiction of the case, depends upon the offer to return the property and to rescind the contract, and that question will first be examined.

To authorize the Chancellor to rescind a contract for the purchase of a chattel, for fraud in the sale, vendee should tender back the property in a reasonable time after the discovery of the fraud. What is reasonable time depends upon the facts and circumstances of each case.

It was incumbent upon the purchasers to have tendered back the fillies and demanded a rescission of the contract within a reasonable time, and what should be deemed reasonable time, must depend upon the particular facts and circumstances of the case.

The complainants alledge that the purchasers of these animals "had formed a partnership to raise full, perfect and thorough blood horses, according to the then standard of the most perfect blood in America," and in view of that object, they had applied to the defendant and made the purchase in question. Under such circumstances, we are bound to presume that they obtained from the vendor the pedigrees of the animals purchased. It would be, indeed, singular that $500 each, should have been given for them, and that on account of their blood, and that no evidence or statement of what their blood was, should have been received and preserved. Buford says he gave them all the information he had upon the subject; but it does not rest upon presumption and the answer of the defendant, whether the purchasers obtained the pedigrees of the stock at the time of the purchase; the fact is emphatically admitted by the complainants, by the allegation "that the pedigrees furnished only went about two degrees back." It may then be assumed that a particular history of the blood of these animals was

furnished by the defendant, at the time of the sale. It is not even pretended that this history was not correct as far as it went, but the objection is that it only ran back about two degrees. Now if the pedigrees thus obtained and in the possession of the purchasers, contained evidence of any impure, cold, scrub blood in these fillies, it could, and no doubt would have been soon detected, and no persons would have been more likely to make the discovery than the purchasers themselves. The very enterprize in which they had embarked, would necessarily lead to critical investigation and inquiry upon the subject. Besides, they appear to have been engaged upon the turf, and in training and running these very mares but a few months after their purchase. But if the alledged defect in their blood could not be detected from the pedigree, when or how was the defect discovered, or in what does the impurity consist? Upon this point there is neither allegation nor proof. But the complainants rely alone upon the facts stated in the answer of the defendant, to show that the stock was not of perfect and thorough blood, or rather that these facts are insufficient to prove it of that character, and these facts, as we have seen, must have been in the knowledge of the purchasers from the time of the sale.

There is no direct testimony as to the time when the offer to return was made. The complainants alledge that it was made as soon as they ascertained, or had become fully satisfied, that they were cheated, and that the blood of the stock was not such as was represented. But this allegation, even conceding it true, is by no means conclusive that that the tender or offer to return was made within a reasonable time. It does not prove an offer to return as soon as by reasonable and ordinary vigilance in the use of the means in their possession, the alledged defect and fraud could be ascertained. But from the answer of Buford in reference to the alledged offer to return, who denies that any complaint as to the blood of the fillies was made till after racing stock had fallen in the country, and pay day had arrived, and from various facts appearing in the record, we think it is very clearly to be inferred, that

*Allegation of a tender back without specification of time, though not denied, does not authorise the inference that it was in reasonable time, or as soon as by reasonable vigilance it could have been ascertained.*

BUFORD
vs
BROWN, &c.

Circumstances
from which the
Court infer that
the tender back
of the property
was not in rea-
sonable time.

the offer was not made till more than three years afte r the sale.

The first note was payable one year after the sale. Shortly after it became due, the purchasers sought longer indulgence, and in consideration of obtaining it, the complainant, Brown, became surety upon both notes. Some time after the second note became due, which was two years after the sale, suits were brought upon both notes. The sale was made in February, 1840. In September, 1842, after an ineffectual defence by one of the purchasers and the surety, Brown, judgments were obtained, which were brought to this Court by appeal, and affirmed. The mandate of this Court was returned and entered in the Court below in September, 1843, and the complainants exhibited this bill in November following.

After suits were commenced upon the notes, Brown complained that longer indulgence was not given, but no complaint was made of any defect in the property or fraud in the sale ; nor was any defence attempted or complaint made upon that ground, upon the trial at law. The allegation in complainants' bill and the answer of Buford, furnish all the evidence of any complaint as to the quality of the stock or the offer to return it. How it happened that so long a period elapsed before they became fully satisfied of the alledged fraud, is wholly unexplained. They do not alledge or prove the discovery of any facts not in their possession at the time of the purchase, by which the fraud was made manifest.

But without pursuing the inquiry further, it is sufficient to say that the complainants have not, we think, satisfactorily established a tender of the property and an offer to rescind, within such reasonable time as to bring their case within the jurisdiction of a Court of Equity.

The following authorities bear upon the question of the vendees duty as to the return or offer to return the property to the seller, in order to give a Court of Equity jurisdiction : *Hoggins* vs *Becraft*, (1 *Dana* 28,) *and authorities there cited ; Stewart* vs *Dougherty.* (3 *Dana*, 480 ;) *Hardwick* vs *Forbes*, (1 *Bibb*, 212.)

But if we are mistaken upon the question of jurisdic-

tion, we are yet of opinion, the complainants have failed to manifest their right to relief upon the merits.

They alledge that the defendant, at the time of the sale, represented the "stock to be *full*, perfect and thorough bred, and that he would furnish pedigrees for each of them proving and establishing their perfect and thorough blood." They further alledge that the fillies were not of the character represented, and that the defendant well knowing such to be the fact, fraudulently concealed it from the purchasers. These allegations are denied by the defendant.

There is no proof of what transpired at the sale, except what may be inferred from a letter of the defendant to the purchasers, or one of them, before the sale, in reference to his stock of horses, and from statements made by him afterwards in regard to the fillies in question. In the letter which appears to have been written in answer to one from one of the purchasers, the defendant says: "I can furnish you with colts and fillies of different ages from three years old down to one, the most of which were got by Medoc, and out of thorough bred mares, of the most fashionable blood in Kentucky," and he concludes by saying: "If you are disposed to purchase you had better come and see the stock and judge for yourself." The sale appears to have been made some two weeks after the date of this letter. He subsequently stated, sometimes, that the fillies were of good blood—fine blood—thorough bred, and that he had sold them as such. We infer from all this testimony bearing upon this point that, although the defendant may not have represented the stock as "of full, perfect and thorough blood," he represented it as thorough bred. As to the difference between the alledged representation, and what we think may be assumed as the actual representation in regard to the blood of the stock, we are not prepared, nor do we deem it important, to decide. The material point in determining the question of fraud, is the known falsity of the affirmation when made.

The first enquiry then is, whether the blood of these mares is shown to be different from the representation. That fact we think is not established by the proof. It is

conceded that Medoc, the sire, was thorough bred; and there is no sufficient proof that the blood on the dam side was not equally pure. The only testimony upon this point is that the pedigrees furnished by the defendant do not, in the opinion of two witnesses, whose depositions are in the cause, and who represent themselves as judges of blooded stock, entitle these fillies to the appellation of *thorough bred.* These pedigrees run back some three generations; and were furnished the purchasers at the time of their purchase. No impure taint or cross is pointed out by these witnesses, nor does it otherwise appear, that there was any, which should deprive these animals of the high character given to them by the defendant. They may be as pure almost as the renowned Godolphin himself, and the testimony in this cause still be all true.

To authorize the Chancellor to rescind for fraudulent representations in the sale of of property, it should appear to have been wilfully false, and in what particular.

There is then not only no proof of any *wilful* or fraudulent misrepresentation by the defendant, as to the blood of this stock, but there is in fact none or no sufficient proof, that it was not such as represented. It is not shown that any fact connected with the history, or in reference to the blood or ancestry of the stock was suppressed or concealed by the defendant.

The allegation that he agreed or represented that he would furnish pedigrees establishing their perfect and thorough blood, is denied and wholly unsustained by proof. This case we think is not brought within the principle of *Thomas* vs *McCann.*

Upon the whole we are of opinion in every view of the case the decree is erroneous.

The decree is, therefore, reversed and the cause remanded with directions to dissolve the complainants' injunction with damages, and to dismiss their bill with costs, but without prejudice to their remedy at law.

*Morehead & Reed, and Grigsby* for appellant: *C. A. Wickliffe, B. Hardin, B. & A. Monroe and Linthicum* for appellees.