## Harrison v. Nicholson-Foley Company.

(Decided February 26, 1918.)

### Appeal from Whitley Circuit Court.

1. Bills and Notes—Action Upon Note—Plea of Fraud.—In an action by holder of a note in which the defense is that the note was obtained by fraud and without consideration, evidence examined and held that the plea is not sustained by the testimony.

2. Bills and Notes—Burden of Proof.—In such case where the plaintiff relies on being a bona fide purchaser without notice, the value of the thing purchased for which the note was executed can not be inquired into, as it constitutes no defense if the plaintiff is a

bona fide purchaser without notice, and in such case the burden is on the defendant to establish his defense, including his denial that plaintiff is an innocent purchaser without notice, since the note itself makes a prima facie case for the plaintiff.

3. Bills and Notes—Action Upon Note—Defenses.—Where the testimony shows the plaintiff to be a purchaser for value and in good faith, circumstances creating only a mere suspicion are not sufficient to overcome that testimony, and in that case it is the duty of the court to instruct the jury peremptorily to find for plaintiff unless there is evidence that he actually knew of the defect in the note sued on, or he knew of such facts as to make his action in purchasing the note one of bad faith.

4. Bills and Notes—Negotiable Instruments—Security.—A pledgee of a negotiable instrument who took it as security for a debt simultaneously created is a holder in due course and may maintain a suit upon the pledge to collect it.

HENRY C. GILLIS and W. B. EARLY for appellant.

S. M. KASH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and defendant below, Nicholson-Foley Company, was a corporation engaged in the mercantile business in the city of Corbin, Kentucky. The Lyon-Taylor Company, which was a name selected by an individual doing business in Iowa City, Iowa, entered into a contract with defendant on September 9, 1914, by which it agreed to furnish to the defendant certain articles of merchandise to be used as prizes for a contest which the defendant contemplated inaugurating for the purpose of increasing its business. The Lyon-Taylor Company in addition agreed to furnish certain advertising matter necessary to prosecuting the contest, and the chief prize was to be a free trip for the successful candidate to the Panama Exposition at San Francisco. The defendant was to do all the work necessary to interest ladies to become candidates in the contest and to get them to work and the Lyon-Taylor Company was to furnish the material and the ticket for the trip to the exposition. It also obligated itself to guarantee to the defendant a certain per cent. increase in its business for the first year following the contest over the one preceding it, in consideration for all of which the defendant executed to that company its note by which the payor agreed and promised to pay to the payee $74.50 three months after

date (September 9, 1914), and a like amount six, nine and twelve months afterwards, making the total sum of $298.00. The Lyon-Taylor Company also agreed to send to whomsoever the defendant might designate its bond in the sum of one thousand dollars ($1,000.00) as security for the performance of its part of the contract, and the defendant agreed to report to that company each thirty days its gross sales "and promptly furnish all information requested to assist in pushing this trade extension plan."

On November 16, 1914, the payee of the note borrowed from appellant and plaintiff below, C. W. Harrison, at Iowa City, in the State of Iowa, the sum of one thousand dollars ($1,000.00) and endorsed the defendant's obligation and delivered it to him as collateral security for the loan. Thereafter, and on February 13, 1915, the first installment of $74.50 was paid, with which the obligation was credited, but no other payments having been made, the plaintiff brought this suit to recover the remaining three past due installments.

In the plaintiff's pleading it is alleged that he was an innocent purchaser of the obligation, having obtained it in the due course of business before maturity, and that under the laws of the State of Iowa, where it was made payable, he was entitled to recover as such holder. The defensive pleas put in issue the fact of the plaintiff being a holder in due course and attempted to rely upon fraud practiced by the payee in procuring the instrument and that it was without consideration. It is extremely doubtful if these matters were properly pleaded, but waiving that question the only evidence given by the defendant which it claims constitutes fraud is that the payee failed to furnish some additional coupons and ballots after the contest had been inaugurated and was in progress, but it is admitted that these were provided by defendant and the contest proceeded. There is nothing to show what was the additional cost to the defendant because of such alleged failure, nor is there any damage pleaded or proven as a result of such omission. They were executory promises in their nature and their violation furnished grounds for recoupment only and not a defense to a suit on the obligation. However, there was no demand made, according to the testimony of defendant's chief witness, G. W. Nicholson, for such articles until after the payment of the first installment,

which was only seven days before the contest was to and did close. Under these circumstances it would scarcely have been possible to furnish them in time to be used before the closing of the contest. Moreover, defendant never reported any of its sales as it had agreed to do until December 18, 1914, more than three months after the contract, in which letter it claimed that the thousand dollar bond had not been furnished, but plaintiff's testimony shows that the bond was promptly sent immediately after the contract was entered into to the bank at Corbin, and there is no proof in the record contradicting this testimony.

On October 31, 1914, defendant wrote Lyon-Taylor Company seeking to cancel the contract, not because the latter had failed to comply with it, but because "we are now thoroughly convinced that it will not pay, and that it will not add anything to the sales. And it is our judgment that we had better drop it before we spend any more money on it." The reasons assigned in that letter for the cancellation of the contract were that "this (Corbin) is a railroad town and almost any one who wishes to go to the exposition can get a pass," and "also, the drug stores here had a similar contest only theirs were for pianos and ponies, and they run it so long that they got the people thoroughly disgusted."

It is admitted that the contract was read and thoroughly understood at the time it was executed, and there is no pretense that the agent who procured it made any representations not contained in it.

On January 5, 1914, defendant wrote Lyon-Taylor Company a letter in which it enclosed a list of contestants and stated that "our sales for the month of December amounted to $2,349.85. This, we think, is good." It is true that the witness Nicholson testified over the objections of the plaintiff that the goods which were to be used as subordinate prizes furnished under the contract were not worth exceeding ten dollars, but there is no complaint of the quality of the goods in any pleading, and nowhere in the correspondence nor at any time until this suit was filed do we find any complaint along this line. Other facts and circumstances not necessary to enumerate thoroughly convince us that the contest was not the success which the defendant anticipated and that this is the chief ground for its refusal to pay, and it is therefore exceedingly doubtful if its testimony; though

supported by proper pleading, would be sufficient to defeat a suit brought by the original payee. True it is that the only default, if any, occurred long after the note had been transferred to the plaintiff, and was necessarily a fact of which he could have had no knowledge at the time he acquired his interest.

The statutes of the state of Iowa were introduced, and section 3060-a56 defines what shall constitute notice of an infirmity in the instrument or a defect in its title, and it is identical with section 56 of our negotiable instruments act. Section 3060-a57 of the statute of that state defines the rights of a holder in due course as against prior parties, and it is identical with section 57 of our statute.

The case of Pratt v. Rounds, 160 Ky. 358, is one the facts in which are about as similar to those of the present case as it is possible to find where the parties, or at least one of them, are not the same, except that in that case there was proof of actual fraud committed at the time of the transaction by the agent of the obligee, and there were many suspicious circumstances to show that the plaintiff to whom the note had been transferred took it under such circumstances as to constitute bad faith on his part so as to deprive him of the status of a *bona fide* holder. Yet this court in that opinion said: "But the plain meaning of the statute above quoted (Kentucky statute) is that the rights of a purchaser of negotiable paper are not to be defeated upon suspicion. To defeat him under the statute the facts known to him must be such that his action in taking the instrument amounted to bad faith unless he has actual knowledge of the infirmity or defect."

In that case the plaintiff was shown to have purchased from the payee, who was engaged in a similar business to Lyon-Taylor Company in this case, more than $40,-000.00 worth of obligations. In other words, he seems to have been a standing purchaser of such obligations, while in the instant case there is no proof that the plaintiff ever dealt with any of the paper executed to Lyon-Taylor Company except the security which was transferred to him to secure the thousand dollar loan. Plaintiff and two other witnesses testified without contradiction as to the manner and circumstances of his procuring the note sued on, and the only circumstance, if it can be dignified by calling it such, which would mili-

tate against the *bona fides* of the transaction is the fact that the plaintiff lived in the same city with the payee of the note. This fact, together with additional and more weighty circumstances, existed in the Pratt case, but the court decided that the plaintiff there could not be convicted of being a purchaser with notice except upon suspicion, which the court under the evidence there held insufficient. If the evidence in that case raised only a suspicion, the evidence in this case is not sufficient to get within sight of a suspicion.

While the point is not raised, it might not be amiss to say that the plaintiff being pledgee of the note sued on, is nevertheless a holder in due course and has the right to maintain this suit to collect it. Negotiable Instruments Act, sections 25, 26 and 27, and Elk Valley Coal Co. v. Third National Bank, 157 Ky. 617.

The court overruled plaintiff's motion to instruct the jury to return a verdict for him and submitted the case to the jury upon instructions complained of, but which it is not necessary for us to discuss, inasmuch as we are convinced that the court erred in not sustaining plaintiff's motion for a directed verdict in his favor. The jury returned a verdict for the defendant, and complaining of it the record with a motion for an appeal has been filed in this court, which motion is sustained, the appeal granted and the judgment reversed with directions to proceed in accordance with this opinion.