## Brenard Manufacturing Company v. Stuart.

(Decided December 18, 1925.)

### Appeal from Hardin Circuit Court.

1. Sales—Purchaser who Alleged Contract was Induced by Misrepresentation Held to have Ratified Contract by Subsequent Conduct.—Purchaser of phonographs on contract, who alleges that contract signed was different than as read to him by agent of seller, evidence showing that purchaser had received copy of contract and notes from seller, which he had read before accepting shipment, and that complaint as to terms was not made until after notes became due, held not to have exercised due diligence, and by his conduct to have ratified contract.

2. Contracts—Contract Induced by Fraud Voidable at Option of Party Defrauded.—Contract induced by fraud is not void, but is voidable at option of party defrauded, and requires affirmative action on his part to relieve him of obligation.

3. Sales—Purchaser Accepting Goods and Failing to Repudiate Contract, Held Estopped.—Purchaser of phonographs, who failed to read contract, relying upon misrepresentations of agent who read it to him, but who had learned true contents five days after selling, and made no objection until six months thereafter and who accepted goods, held estopped from repudiating contract.

L. A. FAUREST for appellant.

H. L. JAMES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant, Stuart, was a merchant in a village located in Hardin county. On November 30, 1921, he entered into a written contract with appellant, manufacturing company, by which he agreed to purchase from the company three phonographs with records and other equipment at the price of $422.00, payable in monthly installments, beginning three months from date of the contract, each installment being evidenced by a promissory note.

The notes in substance are as follows:

"B5759 ⎰ P. O. Glendale, State Kentucky. Date
1044 ⎱ 11/30/1921.
For value received I promise to pay to
the order of the Brenard Manufacturing Company
eighty dollars at Iowa City, Iowa, payable as below,
three months after date (amount)
(\$80.00)
"D. R. STUART."

After maturity of the notes the manufacturing company instituted action in the Hardin circuit court against appellee, Stuart, to enforce collection. Stuart answered and denied liability on the notes on the ground of misrepresentation and fraud on the part of the agent of the company in procuring the contract and notes, although he admitted that he signed the notes and the contract. In the answer it is averred: "Said notes were to represent the purchase price of certain phonographs and supplies which were to be furnished by the defendant to the plaintiff on consignment and which this defendant was to display in his store and attempt to sell at retail prices fixed by the plaintiffs, but it was understood and agreed that said notes were not to be paid by the defendant unless and only as the said phonographs were sold, and further understood that unless the defendant sold the same or enough thereof to amount to the aggregate of the notes within the eight months in which said debts were to run, the plaintiffs were to surrender the notes or such as had not been paid, and take back the phonographs and supplies on hand at the stipulated wholesale price."

Further pleading the answer avers:

"He says that at the time the said notes were signed there was attached to the same a writing which the agent of the plaintiff represented contained said agreement, and which this defendant signed at the same time the said notes were signed and which was also signed by the agent of the plaintiffs.

"The defendant says that he later discovered that the real contract made between him and the plaintiff was not embodied in said writing, but he says the same was falsely and fraudulently represented by the said agent as containing said real contract, and this defendant on said occasion relied upon the said representations of said agent, and was in-

duced to sign said writing and the said notes through the fraud of said agent in thus misrepresenting the contents of said writing.

"He says that the said agent pretended to read the said writing to this defendant, and read the same as though the said writing contained the true contract between plaintiff and defendant, and this defendant believing that said agent read said contract correctly and under the belief that same expressed the contract was thereby induced to sign the same and to sign said notes."

The reply put in issue all the affirmative allegations of the answer, and further pleaded "that said order and said notes were the only contracts signed by the said D. R. Stuart and contained the entire contract between these plaintiffs and the said Stuart. They state that said order and said notes were forwarded to these plaintiffs by the said salesman and, on December 5, 1921, these plaintiffs notified the defendant by letter that his said order had been approved and accepted, and with said letter the plaintiffs enclosed to the defendant a copy of the order and the notes which he had given to them, and in said letter they especially called his attention to the fact that they did so enclose said copy of said order and notes and called his attention to the day of maturity of said notes and referred him for other information to the order blank itself. . . . The defendant received said letter and said enclosures not later than December 7th, 1921, and made no complaint to these plaintiffs that said order and said notes did not correctly, set out the said contract with them, but received and kept said goods, and undertook to sell same, and did sell part thereof, and made no complaint about said contract or any error therein and made no offer to return any of said goods until June 19, 1922, after four of said notes had become due."

After the hearing of evidence the court adjudged the defendant Stuart's signature to the contract was obtained by fraud and misrepresentation as to its contents by "agent of the plaintiff and that there was omitted from said contract, without plaintiff's knowledge, a provision authorizing him to return the machines in question. The contract is, therefore, cancelled and the defendant's notes executed for the machines are cancelled, except the

defendant is adjudged to pay to the plaintiff $10.20, the amount of the records furnished with the machines which, or a part thereof, have been sold and cannot be returned, and the cost of this action for which execution may issue.''

The contract which accompanied the notes contains the following provision:

"If my sales under this contract do not amount to $422.00 you agree to either pay me the difference in cash or repurchase the Golden-Throated Claxtonolas and records if returned to you in good order and you are to send your bond in the sum of $422.00 to protect me in the conditions of this contract.

"To make the last above paragraph binding upon you I agree to furnish within thirty (30) days of date hereof 50 names and addresses of persons who may be interested in securing Claxtonolas with whom you are to take up correspondence, each sixty days to furnish you from 10 to 25 names and addresses of persons who may be interested in securing Claxtonolas to whom you are to send appropriate advertising matter, take up shipments promptly upon arrival, properly display Claxtonolas in my store, use ordinary diligence in the sale thereof, promptly meet all obligations entered into under this contract, and to furnish you all the reasonable information you request to enable you to assist in the sale of Claxtonolas.''

As grounds for reversal of the judgment appellant insists that if appellee did not know the contents of the order when he signed it, it was because of his own failure to exercise ordinary diligence, and he cannot rely upon such a defense; and further that appellee did not act with diligence in rescinding the contract after he learned its contents; that appellee never offered a return of the goods received under the contract or compensation for those disposed of, and, therefore, cannot ask a rescission of the contract or defend against the notes.

Appellee Stuart's principal defense to the notes, which he acknowledges he signed and delivered to the agent of the appellant company, is that the contract and notes were obtained from him through misrepresentation and fraud on the part of the agent of appellant company.

The evidence shows that the agent of the company, a traveling salesman, went to the store of appellee and presented the proposition to appellee and after some discussion appellee agreed to purchase the graphophones and supplies and to enter into the contract, and executed the notes; that appellee was busy about the store and asked the agent of appellant company to read the contract to him; that the agent did read or pretend to read the whole of the contract to appellee, and appellee not knowing what the contract contained supposed the agent of the company had read him the whole contract as prepared and printed, and relying upon the agent's reading of the contract accepted the contract and signed it without himself reading it; that the contract as read to him was unlike the contract which he signed, and this constituted the fraud and misrepresentation of which he now complains. Let all that be granted and appellee is yet bound upon the contract, if we accept his own testimony. He agreed to purchase the graphophones and supplies and signed the notes for the purchase price. He admits he read the notes, and he signed them, but says he did not read the contract, relying on the agent to read that instrument for him although appellee could read. But if this were not enough he admits that within a few days after he gave the agent the order and signed the contract and notes, he received through the mail from the company a copy of the notes and of the contract which he signed and that he then and there read the notes and the contract and understood their terms. At that time the phonographs and supplies had not arrived. A letter from the company accompanied the copy of the contract and notes specifically calling attention to the contract and notes with a request to appellee to read them. This letter with contents was received only about five days after the order was given, on November 30th. Although appellant read the copy of the contract received with copies of the notes he did not make complaint to the company of the terms of the contract, but with the contract before him and with full knowledge of its contents, he received and accepted the shipment of graphophones and supplies and put them on sale in his store. Some of those goods were sold by appellee to his trade but he was unable to sell the phonographs. While this situation existed the first note became due and was not paid. The company began to write appellee about the note and to insist upon payment. Soon another note became due and they again wrote him. When

the company became insistent upon the payment of the notes in June appellee, Stuart, following the execution of the notes in November, wrote the company asking a cancellation of the contract and the surrender of the notes. This was too late. He had not exercised diligence after learning the contents of the contract, to obtain a rescission thereof. If, as he contends, the agent of the company misread the contract to him he was entitled to a cancellation of the contract when he discovered the fraud, provided he acted promptly and repudiated the contract, but when he received a copy of the contract containing the correct terms and read it but failed to make complaint to the company of the misrepresentation and accepted the goods when they arrived and placed them on sale and continued for months to offer them for sale in pursuance to the contract, a copy of which he held, he waived his right to a cancellation of the contract and by his conduct ratified the contract which he had signed at the time believing it contained terms more favorable to him than in fact it did contain. Buford v. Brown, 6 B. Mon. 555; Clark v. Smith's Exors., 10 Law Rep. 196; Hartford Life Ins. Co. v. Harlon, 104 S. W. 792; Miller v. Browning, 89 S. W. 3; Stewart v. Daugherty, 3 Dana 479.

A contract induced by fraud is not void; it is voidable at the option of the party defrauded, and it requires affirmative action on his part to relieve him of the obligation. If he elects to avoid the contract he can do so only on the condition of returning what he has received under it. If he elects not to avoid it he has an independent cause of action for damages arising from the fraud. Ettlinger v. National Surety Company, 221 N. Y. 467, 3 L. R. A. 866.

The inactivity of appellee, Stuart, when he learned the true terms of the contract signed by him, and his acceptance of the goods purchased under the contract, estopped him to repudiate the contract, after an unreasonable delay. He learned the true contents of the contract about five days after he signed it in November. He was entitled to a reasonable time in which to determine what he would do, that is, whether he would abide by the terms of the contract or repudiate it, and ask a cancellation of his notes, but after the expiration of a reasonable time in which to make his election, appellee Stuart was bound, in the absence of an election, to abide by the terms of the contract which he signed.

For these reasons the judgment of the lower court must be reversed for new trial not inconsistent with this opinion.

Judgment reversed.