## Bedinger, et al. v. Citizens' National Bank of Covington.

(Decided January 19, 1926.)

### Appeal from Boone Circuit Court.

1. Bills and Notes—Pledges—Bank, as Pledgee of Notes, is Holder in Due Course—Pledgee May Collect Value of Notes, where Debt for which Pledged More than Aggregate Amount of Notes.—Bank; as pledgee of notes, is a holder for value to extent of debt for which they are pledged, and, where debt was more than aggregate amount of notes, bank may collect value of notes, if it is a holder in due course.

2. Bill and Notes—Burden is on Bank to Show that it is Holder in Due Course, where Notes Obtained by Fraud.—Under Ky. Stats., sections 3720b-56, 3720b-59, burden is on bank to show that it is holder in due course, where pleadings admit that notes were obtained by fraud.

3. Bills and Notes—Fact that Member of Finance Committee of Bank Accepting Pledge from Tobacco Company was Tobacconist Held Insufficient to Show Bad Faith on Part of Bank.—Fact that member of finance committee of bank which made loan and accepted notes as pledge from tobacco company was a tobacconist, who would likely have known financial condition of tobacco company, held insufficient to show bad faith on part of bank that would defeat claim of being holder in due course, under Ky. Stats., section 3720b-52.

4. Bills and Notes—Bank Not Shown to have Acted in Bad Faith, where President Asking Manager of Company as to Conditions, and was Not Informed that Company was in Trouble.—Where president of bank asked manager of tobacco company, to whom they had made loans, as to its conditions, and manager criticized

report made by vice president as being too flattering, but did not intimate that company was in trouble, held that this was not enough to convict bank of bad faith.

5.  Bills and Notes—Peremptory Instruction for Makers of Alleged Fraudulent Notes Properly Refused, where Officers of Pledgee Bank Testified Positively as to Bona Fides of Transaction.—Where officers of bank, who accepted as pledge notes given to tobacco company, which were alleged to have been secured fraudulently, positively and unequivocally testified as to the bona fides of trans·action, peremptory instruction for makers was properly overruled.

6.  Appeal and Error—Erroneous Instruction, Placing Burden of Proving Notice on Maker, where Pleadings Admitted Notes Obtained Fraudulently, Held Not Prejudicial, in View of Evidence.—In suit by bank to recover on notes pledged to it, where pleadings admitted that notes were obtained by fraud, instruction placing burden of proving notice upon defendants was erroneous, but, in view of overwhelming weight of evidence, held not prejudicial.

7.  Pledges—Refusal to Make Receiver Party to Action on Notes in which he had no Interest Held Proper.—In action to recover on notes pledged to bank, refusal to make receiver of company to whom notes were given party held proper; receiver having no interest therein.

R. C. SIMMONS for appellants.

O. M. ROGERS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

J. C. Bedinger, J. C. Gordon, A. R. Johnson and A. L. Reeves, each executed his several promissory note to Frismuth Brothers, a corporation, for the purchase of stock. These notes were assigned and endorsed by Frismuth Brothers before maturity to the Citizens' National Bank as collateral security on a loan. Not being paid the bank filed separate actions against the makers in the Boone circuit court. The defendants answered, pleading fraud in the execution of the notes, also no consideration. This was not denied by the reply, which alleged that plaintiff had no knowledge of the infirmity of the notes and took them in good faith and for value, and this constitutes the issue in the case. The several cases were combined and heard together. From a judgment for plaintiff in each, the several defendants appeal.

It appears in the evidence that the Lovell-Buffington Company, a corporation, was engaged for many years in the manufacture of tobacco in Covington, but had been

placed in the hands of a receiver in the early part of the year 1922.

Frismuth Brothers Company, to be known hereafter as the "company," was a corporation engaged in the same business in the state of Pennsylvania. In the summer of 1922 it negotiated the purchase of the Lovell-Buffington effects and assumed its indebtedness, moving to Covington for that purpose. The banks of that city solicited its account and plaintiff wrote the Central National Bank of Philadelphia and the National Bank of Germantown, Philadelphia, in reference to its business standing and rating. Both of these banks answered favorably, it appearing that the firm had had an account with the latter. The company also furnished plaintiff a financial statement of its affairs as of May 1, 1922. It was quite flattering and upon the strength of this information the bank solicited its account. Accordingly on August 14, 1922, it loaned to the company the sum of $10,000.00 on its individual note, with two of its officers as surety. A similar note for the same amount was executed in the same way on September 21, 1922, and after deducting the discount the proceeds of these notes were placed to the credit of the company on a checking account.

On the 12th of December the company produced and offered to discount to the bank forty-two notes executed to it in the purchase of its stock. These notes were not due for more than four months, the time limit placed on loans executed to the bank, and it declined to discount them, but suggested that it would loan to the company the amount represented by them, $9,115.00, on its note and take the purchase notes as collateral security, which was done, the five notes in this suit being embraced in the number. The first note for $10,000.00, executed August 14th, matured two days later. On that day the company executed a fourth note to the bank for $7,500.00, and gave to it a check for $10,000.00 in payment of its first note, which was then cancelled. Thereafter the company continued to deposit and draw on its checking account until some time in January, 1923. By the first of that month it was ascertained that the company was in distress, and on the first of February following it was placed in the hands of a receiver, and since then has been adjudged a bankrupt.

The bank filed its claim with the trustee in bankruptcy and collected 35% thereon. It has also collected about $1,500.00 from the other collateral notes, leaving a balance due on the $9,115.00 note of $4,228.68. The above facts are proven by the president and cashier of the bank, each of whom further states that he had no knowledge or intimation of any infirmity in the paper and did not hear of any delinquency upon the part of the company until the last of December, some weeks later.

The defendants introduced a tobacconist of Boone county, who transacts more or less business in Covington, and who states that he was solicited to purchase some of the stock of the company, and upon investigation learned that its financial reputation was bad and that this was prior to December 12th. They also introduced the general manager of the company, who states that some time in December the president of the bank called him over the telephone and asked him in reference to the company's business. That he responded that he had signed a statement made by the vice president showing assets six times as large as liabilities, and that he told the vice president that it was a reckless statement and would probably get him in trouble, that an audit was being made of the books of the company and if it showed up bad he would at once notify the bank; that he did so notify the president of the bank about the last of December, some time after these notes were negotiated. It is also shown that the finance committee of the bank consisted of the president and three other members, one of whom, Mr. Heiser, was in the tobacco business, but not connected with the company. Neither of the last three has testified.

The bank as pledgee of the notes is a holder for value to the extent of the debt for which they were pledged, and as this is shown to be more than the aggregate amount of the notes, it may collect the value of the notes if it is a holder in due course. Elk Valley Coal Co. v. Third National Bank, 157 Ky. 617. However, as it is admitted in the pleadings that the notes were obtained by fraud, the burden is on the bank to show that it is the holder in due course. Section 3720b-56-59, Ky. Statutes; Owsley County Deposit Bank v. Burns, 196 Ky. 359; Commercial Security Company v. Archer, 179 Ky. 842; Barnard v. Napier, 167 Ky. 824; Muir v. Edlen, 156 Ky. 812.

Under section 3720b-52, Ky. Statutes, to be holder in course it must appear that the holder "took it in good

faith and for value." "That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." In this case the agents who negotiated the paper testify positively as to these facts; but it is earnestly insisted by the defendants that the bank should have introduced all the members of its finance committee, which consisted of three members besides the president, or at least Mr. Heiser, who is a tobacconist and who would likely have known the financial condition of the company, and that its failure to do so is a circumstance that militates against it and from which an inference may be drawn that it did have notice; but Mr. Heiser was not a member of the company. Further, as a member of the finance committee he approved the individual loans made by the bank to the company, and in view of the fact that defendants introduced no residents of Covington to show any delinquency upon the party of the company during December, no importance is to be attached to this circumstance. Perhaps it may raise a suspicion that he had heard of the company's troubles, but this is not sufficient to show bad faith upon the part of the bank. Citizens' Bank v. Johnson, 182 Ky. 531; Barnard v. Napier, *supra;* Pratt v. Rowans, 160 Ky. 358; Harrison v. Nicholson-Foley Co., 179 Ky. 513. It may be said that the bank was incautious and did not exercise good judgment in its dealings with the company, but its action clearly indicates that it considered the company solvent and desired its business, and its negligence in this respect (if any) does not show bad faith in the acceptance of these pledges, Citizens' Bank v. Johnson, *supra,* and in the face of the clear and unequivocal statement of the agents who negotiated the paper the inferences sought to be drawn have but little weight, nor does the evidence of Mr. Booker militate against this view. The president of the bank asked him as manager of the company as to its condition. He criticised the report being made by the vice president as being too flattering, but did not intimate that the company was in trouble and promised the president to notify him as soon as an audit was made if it showed up bad, but he did not call him again until several weeks after this paper was pledged. Certainly this does not convict the bank of bad faith.

The cases of Owsley County Deposit Bank v. Burns, 196 Ky. 359, and Commercial Security Co. v. Archer, 179 Ky. 842, relied upon by the defendants, do not conflict

with this view. In the Owsley case, the payee, Fuller, received a note made by Burns without any consideration. Fuller was cashier of the bank and negotiated the note to the bank. The only witness testifying for the bank on this point was the assistant cashier, who knew nothing about it, and the court did comment on the fact that no other officer of the bank was asked in reference to it. In the Archer case the only witness who testified was the one who negotiated the notes. He stated that they were regular upon their face, but did not state as to whether he had knowledge of any defect or infirmity in them. In both of these cases there was an entire failure of proof to show lack of knowledge of the infirmity on the part of the holder. Here the agents who accepted the pledged paper are positive and unequivocal in their testimony as to the *bona fides* of the transaction. It is clear that the court properly overruled a peremptory instruction for the defendants; indeed a peremptory instruction for the plaintiffs may have been proper. This was not given, but the issue was submitted to the jury under an instruction which in effect placed the burden of proving notice upon the defendants, and this instruction is criticised. It may be admitted that it was erroneous in form, but in view of the overwhelming weight of the evidence we do not think it could have been prejudicial. During the progress of the trial a motion was entered to make the receiver a party defendant in the action, which was refused, and it is complained that this was error. The receiver had no interest in the notes and plaintiff was entitled to collect the full amount thereof as stated *supra,* consequently the court did not err in this ruling. Other errors are suggested, but we do not think any of them material.

Wherefore, perceiving no error, the judgment is affirmed.