## Brenard Manufacturing Company v. Hager.

(Decided December 14, 1926.)

### Appeal from Johnson Circuit Court.

1. Reformation of Instruments—Evidence of Alleged Omission of Provision Permitting Return of Machine Purchased, if Not Sold, Held Insufficient to Warrant Reformation of Contract.—Evidence as to alleged omission of provision allowing return of machines purchased, if not sold within six months, held insufficient to warrant reformation of written contract.

2. Reformation of Instruments—Evidence to Warrant Reformation of Contract Must be Clear and Convincing, and Establish Mistake Beyond Controversy.—If written contract does not express true agreement, because of mutual mistake of parties, it may be reformed; but, to warrant reformation, evidence must be clear and convincing, and establish mistake beyond reasonable controversy.

C. A. ATKINSON and BLAIR & HARRINGTON for appellant.

FRED HOWES for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming on cross-appeal and reversing on original appeal.

In the month of October, 1921, Russell Hager signed an order and agency contract addressed to the Brenard Manufacturing Company at Iowa City, Iowa. In addition to other provisions not material, the order contained the following provision:

> "Gentlemen: Upon your approval of this order and agency contract deliver to me at your earliest convenience, F. O. B. factory or distributing point, the articles mentioned below, in payment for which I herewith hand you my notes aggregating $422.00 which you are to cancel and return to me if agreement is not approved by you."

The articles to be delivered under the agreement were three Golden-Throated claxtonolas and twelve double-disc 10-inch records. The net price of these articles to the dealer Hager was $422.00, for which he executed five notes for $80.00 each and one note for $22.00. The order was then sent to the Brenard Manufacturing Company and approved by them on October 29, 1921. A letter was then mailed to Hager notifying him of the approval of the contract, and a copy of the contract was enclosed. Following this the articles agreed to be delivered were shipped to and received by Hager.

The notes not being paid at maturity this suit was brought to recover thereon. The first paragraph of the answer and counterclaim was a general denial. In the second paragraph defendant pleaded that at the time of the execution of said notes he entered into a written agreement with plaintiff by the terms of which, among other things, plaintiff promised and agreed that this defendant should have a period of six months from the time said machines were received by him in which to sell same, and if same were not sold or disposed of within said period of six months this defendant had the right to return the same to plaintiff, who would thereupon give defendant credit therefor and cancel said notes; that by mistake or oversight this agreement was left out of the contract of sale; that but for said agreement he would not have signed the same. He further alleged that within six months from the date of the arrival of the machines he notified plaintiff of his inability to sell same and

tendered and offered to return said machines, but plaintiff refused same. He also averred that on account of plaintiff's refusal to accept the machines he had been compelled to furnish a storage place therefor since the expiration of the six months, which was reasonably worth the sum of $240.00. On final hearing the chancellor reformed the contract and gave judgment for defendant. Plaintiff has prayed an appeal, and defendant has prosecuted a cross-appeal.

According to Hager, he went over the proposition carefully with Allen, appellant's agent, and looked over all the papers Allen had, the contracts, etc. Allen said that he was not bound to pay for the machines unless sold and that he was to have the option to return the machines at any time within six months if unable to sell them. Thereafter he offered to return the machines, but appellant refused to receive them. He then stored the machines in his place of business and they occupied almost one-third of his store. The fair rental value of the space occupied was $30.00 a month. At the time he signed the contract he thought the agreement that he was to have the privilege of returning the machines at any time within six months if not sold, and that a special field man would be sent to put on the sale, were in the contract, and would not have signed the contract notes if he had understood that these two agreements were not included in the contract terms. On cross-examination Hager testified that he had been in the drug business four years and a half. Previous to that time he was a traveling salesman. He had had some experience in business and supposed he had a good education. At the time he took the agency he entered into a written contract through the agent O. A. Allen, and a copy of the contract was sent to and retained by him. On being asked if he thoroughly understood what was in it he said, "I can't say that I thoroughly understood it." However, he did understand that the contract was to be approved before the shipment was made. On redirect examination Hager testified as follows:

"A. Mr. Allen told me that they would send a field man into this territory within the next thirty days.

"Q. 2. I am asking you now, Mr. Hager, whether or not that was omitted from the written contract by oversight on the part of yourself and Mr. Allen?

"A. It was.

"Q. 3. And say whether or not this other provision to the effect that you had the privilege of returning these goods at any time within six months was also omitted from the written contract by oversight or mistake?

"A. It was.

"Q. 4. When did you first find out that these matters were not included in the written contract?

"A. In about six months after I had the machines, after notifying them that I had demonstrated them thoroughly and did the best I possibly could toward making a sale out of them. I then notified them by typewritten letter that I was ready to return the machines at their request.

"Q. 5. What I mean, Mr. Hager, is when did you first learn from inspecting the contract sued on, the matters you have explained, were not embraced within the terms of that contract?

"A. After suit had been filed."

While it is the rule that a written contract that does not express the true agreement because of a mutual mistake of the parties may be reformed, it is also the rule that to reform an executed contract on the ground of mistake the evidence must be clear and convincing, or such as to establish the mistake beyond reasonable controversy. Evans v. Stapleton, 201 Ky. 716, 258 S. W. 295. This is not a case where the agent of a seller misread the contents of the contract to a buyer who was unable to read, or resorted to any device to prevent the buyer from reading the contract. On the contrary, it is a case where the purchaser, who was a man of fair education and considerable experience in business, admits that he read the contract and knew that the contract was not to be binding until approved by appellant. He bases his entire case on the fact that the agent told him that he would have six months in which to return the machines, and then gives as his conclusion that this provision was omitted from the contract by mistake. He does not show that appellant was ever apprised of the provision, or that it was ever intended by him and appellant that the provision should be incorporated in the contract. Clearly, where one signs a written contract not only with knowledge of its terms, but with knowledge of the fact that it will have to be sent away and approved by the principal in the contract, his mere statement that

the principal's agent said•that he would have the right to return the purchased articles in six months, supported merely by his conclusion that this provision was omitted from the contract by mistake, is not sufficient in the circumstances here presented to authorize a reformation of the contract. On the contrary, there is no escape from the conclusion that the real parties executed the precise contract which they intended to execute. That being true, it follows that the court erred in adjudging that the contract be reformed, and should have rendered judgment in favor of appellant.

It likewise follows that there is no merit in appellee's counterclaim for storage.

Wherefore, the appeal is granted, the judgment on the cross-appeal is affirmed, and the judgment on the original appeal is reversed and cause remanded for proceedings consistent with this opinion. ·