## Swinebroad v. Hester, Spoonamore, et al.

(Decided December 17, 1926.)

Appeal from Boyle Circuit Court.

1. Auctions and Auctioneers—Defense of Fraudulent Procurement of Contract of Employment Held Waived by Defendant in Auctioneer's Action for Services.—In action by auctioneer for services performed in selling farm of partners to member of partnership, partner, by signing contract of sale with knowledge of the facts, waived any fraud claimed in procurement by plaintiff of his contract of employment.

2. Auctions and Auctioneers—Evidence of Mispresentation by Auctioneer of Purchasing Partner's Financial Condition Held Insufficient for Jury.—In auctioneer's action for services in selling partnership farm to one of partners, evidence of misrepresentation of auctioneer as to purchasing partner's financial condition held insufficient for jury.

3. Auctions and Auctioneers—Auctioneer Selling Partnership Farm to Partner Under Modified Payment Terms Held Not Entitled to Recover for Services if Not Informing Other Partner of Modification.—If after auction of partnership farm to one of partners, contract of sale was modified with reference to terms of payment, auctioneer held not entitled to recover for services in making sale, if he failed to inform selling partner of the change or fraudulently concealed it.

4. Auctions and Auctioneers—Evidence as to Concealment of Terms Held to Make Denial of Peremptory Instruction Proper, in Auctioneer's Action for Services.—In auctioneer's action for services in selling partnership farm to member of partnership, evidence as to plaintiff's omission to tell selling partner of modification in payment terms held to make denial of peremptory instruction proper.

5. Auctions and Auctioneers—Instructions Denying Recovery of Auctioneer's Fee if Employer was Deceived Held Erroneous.—Instructions, in action for auctioneer's fee, permitting jury to

find for one hiring auctioneer if he had been deceived, without limiting manner in which he must have been deceived, held erroneous.

NELSON D. RODES and C. E. RANKIN for appellant.

HENRY JACKSON and JOE E. ROBINSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On the 13th day of July, 1920, J. Z. Spoonamore and the appellee, Robert Hester, who were the owners of a farm in Boyle county, Kentucky, which they were farming as partners, employed the appellant, G. B. Swinebroad, a real estate man and auctioneer, to sell that farm for them by auction. They signed a written contract of employment by which they promised to pay appellant for his services in selling the farm a commission of 3½ per cent of the successful bid. This contract, among other things, provided that the property was to be sold "without reserve bid or limit," and the terms of the sale were to be: "Ten per cent cash, day of sale; 23½ per cent, January 1, 1921; balance in three equal installments with 6 per cent lien notes bearing 6 per cent interest. Deed and possession January 1, 1921." Spoonamore and Hester had bought this farm several years prior to this time from the appellee Hubble. They were heavily involved, still owing about $54,000.00 on the purchase price, and, both being without resources as each well knew, they were compelled at this time to take some steps looking to an adjustment of their affairs. It was for this reason that Spoonamore, with the concurrence of his partner Hester had sought out the appellant and had him come out to the farm to look it over with a view of selling it for them. After he had done so, the parties entered into the contract above mentioned. The appellant advertised the property in various newspapers, by handbills, and in a catalog which he sent out to prospective buyers, and on the 7th day of September, 1920, conducted the sale on the premises. Before entering into the sale, he had both Spoonamore and Hester sign a paper, which, when later signed by the successful bidder, would constitute a contract of sale, satisfying the statute of frauds.

The farm was first divided into several tracts and the tracts offered separately; it being understood that when all the tracts had been sold separately the farm

would then be offered as a whole, and, if as a whole it brought more than when sold separtely in tracts, it would be disposed of as a whole. The bidding on the separate tracts was rather slack and did not amount to as much as $200 per acre on the average. To get Spoonamore and Hester out of their financial difficulties, the farm had to bring more than $200 per acre. Appellant finished auctioning the farm in separate tracts by noon and the crowd all went to dinner. After dinner the farm was offered as a whole. The bidding still being slack, appellant then announced to the crowd that the owners would also have the right to bid on the property, and the auction continued. Hester had a man by the name of Murphy then to bid for him on the property, and Spoonamore had a man by the name of Dunigan to big for him. Neither Hester nor Spoonamore knew that the other was thus bidding on the property. Neither did the appellant know that either owner was bidding. The property was finally sold to Dunigan at $234.10 per acre.

Appellant completed the paper which Hester and Spoonamore had signed prior to the beginning of the sale by adding the name of Dunigan as purchaser and presented it to Dunigan for signature. Dunigan at once told the appellant that he had bid in the property for Spoonamore, whereupon the appellant crossed Dunigan's name out and inserted that of Spoonamore. He then presented the agreement to. Spoonamore for his signature as purchaser. Prior to Spoonamore signing it as purchaser, appellant inquired of him about the cash payment which the contract of sale called for, and Spoonamore told him that he would arrange about the payments with Hester. The appellant then added to the contract this clause: "It is agreed between J. Z. Spoonamore and Robt. Hester, they will arrange as to the payments." It is in dispute whether Hester was present when Spoonamore and appellant had this conversation about the payments; Hester denying that he was there, and appellant, by his witness Moss, claiming that he was there, appellant himself not being clear in his recollection about it. At all events Spoonamore signed the contract as purchaser . after appellant had added the quoted clause, and then appellant sought out Hester to get him to sign the contract as thus amended. Hester says that when appellant presented the paper to him for signature he asked the name of the purchaser, and

was told that it was Spoonamore. He says that he told appellant that Spoonamore could not buy the farm, that Spoonamore was without resources, and that he had been unable to finance his half of the purchase when the farm was originally bought. He further says that appellant then said that "he would fix that up all right, he was in a hurry and had to go to Lancaster," and that, relying on this statement, and being in the midst of an auction sale of the personal property of the farming partnership, he signed the contract without reading it or knowing that it contained the modification about the payments. Appellant denies this, and says that he fully explained to Hester about the modification, and Hester signed the contract knowing that it contained the amendment. Indeed, if the contract had not been modified, there was no need for Hester to sign it, as he had already signed it according to its original tenor before the sale began. Some time after the sale, Spoonamore executed to appellant a partnership note for the commission appellant claimed by virtue of this auction.

Spoonamore never was able to finance his purchase, and about Christmas following the auction abandoned it. Later he and Hester conveyed the farm back to the appellee Hubble, and about the same time some personal property of the partnership to the father of Hester. Appellant at once brought this suit against Spoonamore and Hester on their note, in which suit he joined Hubble and Hester's father on the ground that the respective conveyances to them were fraudulent and made with the intent to prefer them as creditors. Appellant asked that these conveyances be set aside and held to operate as an assignment of the property of Spoonamore and Hester for the benefit of their creditors under section 1910 of the Kentucky Statutes.

Spoonamore made no defense. Hester answered, admitting at first that the note sued on had been signed by him, but, discovering later that it had been signed by Spoonamore for the partnership, he, by an amended answer, denied that he had signed it or was liable upon it; his theory being that the partnership had been dissolved at the time the note was signed, and that Spoonamore was therefore without authority to sign a partnership note. This issue was ruled against appellees by the trial court, and they are not complaining of that action. He further pleaded that, prior to appellant's employment to

sell the farm, the latter had widely advertised himself as a real estate man of great experience, as a wizard in the selling of farms, as one who always sold any real estate he contracted to sell, and as one who always had and was always able to furnish at all public sales of his customers buyers who would be able and willing to carry out any contract of purchase they made and to pay the highest market price for the property they bought. Hester further pleaded that, relying on these representations, he and his partner, Spoonamore, had entered into the contract of employment under which appellant sold the farm. Hester then set out in detail his version of what had occurred at the auction sale leading up to his signing the contract of sale to Spoonamore.

His original answer seems to follow the theory that this property had been sold to Dunigan, but by amended answers he seems to recognize that the sale was to Spoonamore. In this connection he pleaded that, prior to his signing the contract of sale selling the farm to Spoonamore, Swinebroad had represented to him that he had secured a purchaser who would carry out the contract of sale according to its terms, that he relied on this representation which he believed to be true, and that he would not have signed this contract of sale but for such representation. He further avers that, before he signed the contract of sale, he asked appellant if the latter had investigated Spoonamore's financial ability to carry out this sale, and that appellant said that he had, and that Spoonamore could carry out the contract, and that he then signed the contract of sale relying on this representation. He also claimed that the modification about the terms of payment was written into the contract of sale after he had signed it, which he did without reading it, but that, if in there when he did sign it, the appellant had fraudulently concealed its presence from him and he did not know it was there.

The answer of the appellee Hubble was practically the same as that of the appellee Hester, but it also included a denial that there was any fraud in the conveyance of the farm to him by the partnership. A reply made up the issues. On the trial of the issues as thus found, the jury returned a verdict for the appellees, but against Spoonamore who had made no defense, a peremptory instruction having been given as to him in favor of appellant.

From the judgment in favor of appellees entered on that verdict, appellant brings this appeal. He relies on two grounds for reversal: First, that he was entitled to a peremptory instruction; and, secondly, errors in the instructions given.

It is apparent from the foregoing statement of facts that, when the appellee Hester signed the contract of sale to Spoonamore in the afternoon of the auction, he then knew that the farm had been sold to his partner, with whose financial condition he was thoroughly acquainted. He had been present during the auction and knew the number of the bidders, and the fact that the bidding had been very slack. He knew that, when the farm had been offered in separate tracts, it had not averaged much if anything over $200.00 an acre. He knew the results of the appellant's labors.. Therefore we need not inquire into the nature of the representations which the appellee Hester alleges the appellant made through newspaper advertisements concerning his ability as an auctioneer and as a producer of bidders, nor need we discuss whether appellee Hester could have relied upon their falsity, if false, as a defense to this action had he not signed the contract of sale he did. Signing that contract of sale with the knowledge he then had of the facts of the situation, he gave his approval to what appellant had done, and so waived as a defense any possible fraud here claimed in the procurement by appellant of his contract of employment. Miller v. Browning, 28 Ky. L. R. 175, 89 S. W. 3; Brenard Mfg. Co. v. Stuart, 212 Ky. 97, 278 S. W. 586. This being true, the only question open for investigation and determination in this case then was whether appellee Hester had been procured by the appellant to sign the contract of sale to Spoonamore through misrepresentation or fraud. The fraudulent representations relied on in the pleadings of appellee Hester are that the appellant represented to him at the time he signed the contract of sale that the appellant had procured a purchaser who would carry out the contract of sale according to its terms and that on his inquiry whether or not appellant had investigated Spoonamore's financial ability to carry out this sale, the appellant had replied that he had and that Spoonamore could carry out the contract.

Pausing here, we may say that the proof utterly fails to substantiate these charges on the part of the appellee

Hester. He testified that he knew Spoonamore's financial condition, and called appellant's especial attention to it. He does not say that appellant made any misrepresentation about it, but only that appellant stated "that he (the appellant) would fix that up all right." Whether such a statement, if made by appellant, would, if false, but believed to be true or relied upon, be available as a defense within the rule that where a declarant falsely represents or states his opinion, belief or intent, knowing at the time that it is untrue, such representation is an actionable representation of fact as discussed in the case of Electric Hammer Corp. v. Deddens, 206 Ky. 232, 267 S. W. 207, we need not determine, since the appellees did not plead any such defense. They simply failed to establish by their proof the defense of fraud they did plead as thus far stated.

In addition to the foregoing, however, appellees also pleaded that the appellant fraudulently concealed from the appellee Hester the fact that the contract of sale had been modified with reference to the terms of payment, that Hester had signed this contract without reading it and in ignorance of such modification, and that, had he known of such modification, he would not have signed it. Hester's proof, if believed, substantiated this charge. Although Hester, had he been sued by Spoonamore on this contract of sale might not have been permitted to say that he did not read the contract when he signed it or did not know what it contained (see Pickrell & Craig Co. v. Bollinger-Babbage Co., 204 Ky. 314, 264 S. W. 737), yet Hester is not being sued here on that contract of sale, but by his broker, for the latter's commission for procuring that contract of sale and making the sale. As the contract of sale had been modified in its terms as to payments, since it had originally been signed by Hester it was appellant's duty to communicate so important a fact to Hester, and, if he failed in that duty or fraudulently concealed such change, he ought not to be permitted to recover for his services in making a sale consummated by a contract of sale materially different from that he represented to his principal it to be, if that difference operated in a material way to the prejudice of his principal. Croxton's Ex'x v. Henry & Fleenor, 193 Ky. 318, 235 S. W. 753. If Hester be correct in his version of what took place, the appellant concealed from him the modification in the terms of sale. That such modification

had a very material effect on the situation cannot be doubted, for had Spoonamore been required to pay the "10 per cent cash, day of sale," as the contract originally provided, either the incentive to protect such payment would have caused Spoonamore to go ahead with his contract, or, if he was unable to do so, then Hester would have had on hand a substantial fund out of which he might have reimbursed himself for any damages he sustained by reason of Spoonamore's abandonment of the contract.

It therefore follows from what we have said that the appellant was not entitled to a peremptory instruction in this case. However, under the pleadings and proof in this case the instructions should have submitted to the jury only the issue whether or not the appellant had failed to communicate to the appellee, Hester, at the time he procured Hester's second signature to the contract of sale, the fact that the terms of payment had been modified; whether or not Hester had signed the contract the second time in ignorance of that fact, and whether or not, had Hester known that the contract had been so modified, he would not have signed it. The instructions as given were broad enough to cover much more than this. In effect, they permitted the jury to find for the appellees if it thought Hester had been deceived when he signed the contract the second time, without telling the jury in what respect Hester must have been deceived or misled. In view of the fact that the court had let in all the testimony about appellant's claims as to his ability as auctioneer and to produce buyers who would pay for what they bought, and also about what Hester said the appellant had stated when his attention was called to Spoonamore's financial ability, the statement being to the effect that "he would fix it up all right," a thing he admittedly had never done, the jury might well have believed that it was authorized to find for the appellees, if it thought Hester was deceived in these particulars. But, as we have seen, these matters afforded Hester no defense. It is therefore apparent that the instructions as given were erroneous, for which reason the judgment in this case must be reversed, with instructions to grant the appellant a new trial in conformity with this opinion.