### Stevens v. Bailey.

(Decided March 15, 1929.)

JOE H. WEAKS for appellant.

COLEMAN & LANCASTER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, F. L. Stevens, sued the appellee, Bailey, upon six promissory notes Bailey had executed and delivered to the Brenard Mfg. Company, which Stevens claims to have purchased from the Brenard Mfg. Company before their maturity and without notice of any infirmity therein. These notes aggregated $360. Bailey admitted executing the notes, but pleaded that they were obtained from him by fraud and that Stevens was not the owner of them or if the owner of them, had taken them with notice of the fraud. There were thus two issues raised: First, were the notes obtained by fraud; and, second, was Stevens a bona fide holder of them?

At the conclusion of the evidence, the court directed the jury peremptorily to find for the defendant. Verdict and judgment to that effect followed, and Stevens has prayed an appeal. Considerable litigation has grown out of the activities of the Brenard Mfg. Company, as will appear from the reports of this court. In Brenard Mfg. Co. v. McDaniel, 221 Ky. 27, 297 S. W. 810, they sold a claxtonola and some jewelry; in Brenard Mfg. Co. v. Hager, 218 Ky. 352, 291 S. W. 355, they had sold a claxtonola and some records; in Brenard Mfg. Co. v. Raffel, 214 Ky. 604, 283 S. W. 964, they had sold some claxtonolas; in Brenard Mfg. Co. v. Stuart, 212 Ky. 97, 278 S. W. 583, they had sold some phonographs and supplies; in Brenard Mfg. Co. v. Jones, 207 Ky. 566, 269 S. W. 722, they had sold some claxtonolas and records; in Brenard

Mfg. Co. v. Ohio Drug Co., 206 Ky. 281, 267 S. W. 155, they had sold some sort of trade expansion plan; in Pratt v. York, 197 Ky. 846, 248 S. W. 492, they had sold a piano, watches, etc.; in Pratt v. Rounds, 160 Ky. 358, 169 S. W. 848, they sold a piano and some sort of trade-expansion scheme. The Brenard Mfg. Company seems to have had considerable trouble with its customers, from the number of cases that have reached this court, and in all probability many of its customers just throw up their hands and settle, while others make a rather half-hearted defense; but Bailey seems to have been a man of different mettle. He employed the firm of Messer, Clearman & Olson of Iowa City, Iowa, and cross-examined Theodore O. Loveland and the plaintiff, F. L. Stevens. By this means he established that the Brenard Mfg. Company is a copartnership composed of James L. Records and Theodore O. Loveland, and that they had been in business since December, 1902, dealing in phonographs and phonograph supplies, radios, and radio supplies, pianos, musical instruments of various descriptions, jewelry and advertising and trade expansion schemes. The name Brenard Mfg. Company is a trade-name, under which they usually do business, but they have also done business under the name of Equitable Mfg. Company, Starling Mfg. Company, and Herald Radio Company. Their plan of business is to sell these things to merchants. In this case they did sell to Mr. Bailey three Heraldine radio sets, together with a trade expansion scheme. They take notes from their customers, just as they took notes from Mr. Bailey, and they have an arrangement with F. L. Stevens by which he claims to purchase these notes, and in this record it is developed that on November 30, 1926, Stevens claims to have bought from the Brenard Mfg. Company a number of notes, including the Bailey notes; that the face value of this bunch of notes was $8,246.64, for which Stevens claims to have paid $7,257.04, or, in other words, to have discounted the notes 12 per cent., and there is in this record a check for the latter sum, which he claims to have given the Brenard Mfg. Company for these notes. Stevens says he is a lawyer and investor, and has lived in Iowa City, Johnson county, Iowa, practically all his life and has known Loveland and Records since 1902; that he has made it a practice to discount and buy commercial paper, and that in May, 1926,

he arranged with Loveland and Records to buy paper from them, and this is the way they managed it: ·

### PLAN OF OPERATIONS.

Stevens has in the Citizens' Savings & Trust Company an account in the name, "F. L. Stevens, Brenard Mfg. Co. note account." When the Brenard Mfg. Company has notes for sale, it makes out two lists of these notes, delivers one list to the Citizens' Savings & Trust Company, and delivers to it the notes they are proposing to sell. The Citizens' Savings & Trust Company then checks the list to see that it is correct, makes out check payable to the Brenard Mfg. Company, for the net sum that Stevens is supposed to pay for this bunch of notes, and takes that check and a carbon copy of the list of notes to Stevens; he signs the check, and puts the carbon copy in his files, but never sees the notes. The collection of these notes is then handled by the Brenard Mfg. Company, through Mr. Louis J. Kenyon, who has an office with and probably some position in the Citizens' Savings & Trust Company. As the notes are paid, the sum collected is deposited to the credit of "F. L. Stevens, Brenard Mfg. Co., note account." If the notes are not paid, the Brenard Mfg. Company institutes suit upon them in the name of Stevens, and its attorney, Mr. G. A. Kenderdine, looks after the litigation and the Brenard Mfg. Company pays all the expenses thereof, and conducts all correspondence relative thereto. If, after exhausting all remedies, they are unable to collect any of these notes, other notes are substituted therefor by the Brenard Mfg. Company, and thus the process goes on. By the cross-examination of Stevens it was shown that he had bought under this plan, between $300,000 and $360,000 worth of notes from the Brenard Mfg. Company, between May, 1926, and the date that he gave his deposition, something over a year after that, and that he had, during that time, had several lawsuits and had given his deposition and been cross-examined in a number of cases wherein parties were pleading their notes had been obtained by fraud, and that he knew of the Brenard Mfg. Company having similar trouble in the collection of notes before he began dealing with it.

We are unable to say the court erred in holding that Stevens was not a bona fide holder of these notes, but in order to justify the peremptory instruction to find for the defendant, the court had to find not only that Stevens

440

was not a bona fide holder of the notes, but also that the notes had been obtained by fraud, and, concerning the fraud, there was a conflict in the evidence. That question should have been submitted to the jury.

"The general rule is that fraud 'which is criminal in its essence' and involves moral turpitude at least is never presumed but must be affirmatively proved." 27 C. J. 44, and Kentucky cases there cited.

Thus, upon the next trial, if the evidence is substantially the same, the court should tell the jury to find for the plaintiff, unless the jury shall from the evidence find that the notes were obtained by fraud.

After it is established that a note has been obtained by fraud, then the burden is upon the holder to show that he is a bona fide holder. Establishing that Stevens was not a bona fide holder does not mean that he has no rights by reason of his alleged ownership of these notes. If the notes were validly obtained, he is just as much entitled to recover as if he were a bona fide holder. The only difference is that, not being a bona fide holder, Bailey is not shut off from making any defense to these notes in the hands of Stevens that he could make to the notes in the hands of the Brenard Mfg. Company. Bedinger et al. v. Citizens' Nat. Bank, 212 Ky. 486, 279 S. W. 622 and other cases cited under section 3720b59, Kentucky Statutes. See, also, Muir v. Edelen et al., 156 Ky. 212, 160 S. W. 1048.

Stevens' motion for an appeal is sustained, the appeal granted, and the judgment is reversed.