RIGGINS v. THE MISSOURI RIVER, FORT SCOTT & GULF RAIL-
ROAD COMPANY, *Appellant.*

1. **Contract**: MUTUAL STIPULATIONS : CONSIDERATION. A memorandum of agreement was written in the following form : " Lead from B. to St. L. at 22½ per 100. All lead shipped by C. & R. to be forwarded by M. R., F. S. & G. R. R. at above rates from January 1st, 1873, to January 1st, 1874, and above rates guaranteed for same time." *Held*, that the import of the memorandum was that the railroad company was to transport and C. & R. were to deliver to the company for transportation at 22½ cents per 100 pounds all lead shipped by C. & R. within the year 1873 to St. L. ; that C. & R. did not bind themselves to ship any lead; but they did bind themselves to ship over the road of this company any lead they should ship to St. L., and that this was sufficient consideration for the company's guarantee of rates.

2. ——— : INFORMAL MEMORADRUM OF AGREEMENT. Where parties make and sign a memorandum of agreement with the understanding that a formal contract embracing the same stipulations is thereafter to be written out and executed, if they afterward act upon the memorandum, it will be treated as a valid and binding contract, though never written out in a formal manner.

3. ——— : RAILROAD TRANSPORTATION : WAIVER. Plaintiffs agreed with defendant (a railroad company) for the transportation of all plaintiffs' lead for one year at a fixed rate of freight. During the year plaintiffs shipped some lead by another road, and the president of the railroad company hearing of it charged plaintiffs with having committed a breach of contract. Plaintiffs answered that there was no contract, to which defendant's president replied that defendant, on its part, would so understand the matter in the future. Shortly thereafter, (on the 11th day of the month,) defendant notified plaintiffs that from and after the 15th they would be required to pay a new and increased rate of freight. In the interval between the 11th and the 15th plaintiffs shipped several car loads of lead over defendant's road at the old rate. This was also the rate at the time charged to all shippers. In an action upon the contract, defendant having pleaded the foregoing breach, and plaintiffs having replied waiver of the breach, the court instructed the jury, in substance, that if they believed the shipments made between the 11th and 15th were transported by defendant under the contract, and not in its capacity of common carrier, they would find that the breach had been waived. *Held*, correct.

4. **Rescission of Contract**: PLEADING. If rescission be relied upon as a defense to a contract, it must be specially pleaded. Proof of

the fact will not be admitted under a pleading which only denies the making of the contract and avers a breach of it.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

AFFIRMED.

*Pratt, Brumback & Ferry* for appellant.

The uncertainty and indefiniteness of the instrument on its face, leaving out, among other things, any mention of a corresponding obligation on the part of the respondents to ship all, or any, of their lead by appellant's road, show that it was intended, as respondents in their testimony state, as a memorandum of points to be included in a contract when Mr. Hayden should ascertain by what road he could best ship from Kansas City to St. Louis. *Chicago v. Sheldon*, 9 Wall. 50, 54; Bishop on Contracts, §§ 429, 598; *St. Louis Gaslight Co. v. City*, 46 Mo. 121, 128. The instrument sued upon is void for want of consideration. There is not a promise for a promise. It contains no mutual covenants, nor correlative obligations. It bound the respondents to nothing whatever. They were not obliged to ship all, or any, of their lead by appellant's road. Parsons on Contracts, (5 Ed.) 448, 449; Bishop on Contracts, §§ 428, 429, 430; *Barton v. Great N. R. R. Co.*, 25 Eng. L. and Eq. 477; *Chicago, etc., Ry. Co. v. Dane*, 43 N. Y. 240. As to respondents' plea of waiver—there is no evidence to be submitted to a jury upon the question whether appellant, with full knowledge of the breach of the contract by respondents, afterward accepted and carried lead over their road, under the contract. Bishop on Contracts, §§ 655 to 659. The testimony of Col. Coates was clear, positive and uncontradicted, and the court should have allowed it to be submitted to the jury upon the question of rescission by acts of the parties. Bishop on Contracts, §§ 667, 668, 677, 686. It should also have been submitted to the jury upon

the question of the right of one party to rescind a contract for breach by the other party. 2 Parsons on Contracts, pp. 675, 678; 6 Eng. L. and Eq. 230 ; *Dubois v. Canal Co.*, 4 Wend. 285 ; 8 Reporter 445.

*O. H. Dean* for respondents.

Both parties having acted upon the memorandum of agreement as if it had been reduced to writing, as originally proposed, neither can object because it was not done. 51 Ill. 126; 27 Vt. 485. The memorandum shows a consideration on its face, plaintiffs agreeing to ship all their lead over defendant's road for one year, in consideration of defendant's agreeing to carry it for that time at a specified rate. *Hadden v. Dimick*, 31 How. Pr. 196; *Smith v. Morrison*, 21 La. Ann. 135; *Grove v. Ganger*, 36 Wis. 369 ; *Barton v. McLean*, 5 Hill 256; *Attix v. Pelan*, 5 Iowa 339 ; *Lewis v. Ins. Co.*, 61 Mo. 534. The breach of the contract made by plaintiffs was waived. *Bersch v. Sander*, 37 Mo. 104; *McNaughter v. Cassally*, 4 McLean 530. The question whether the contract was rescinded or not, could not be submitted to the jury, because not raised by the pleadings. *Laraway v. Perkins*, 10 N. Y. 371; *Coles v. Soulsby*, 21 Cal. 47.

HENRY, J.—This was a suit by plaintiffs against defendant for a breach of the following written contract :

"KANSAS CITY, Mo., November 6th, 1872.

Lead from Baxter to St. Louis at 22½ per 100. All lead shipped by Chapman & Riggins to be forwarded by M. R., F. S. & G. R. R. at above rates from January 1st, 1873, to January 1st, 1874, and above rates guaranteed for same time.

H. J. HAYDEN, G. F. A.
RIGGINS & CHAPMAN."

The breach alleged was, that within the year 1873, plaintiffs offered large quantities of lead to defendant for

transportation by the latter under said contract, which defendant refused to receive and carry under the contract, demanding of plaintiffs a greater price, and that the difference between said contract price and that they had to pay for transporation of said lead, was such that they were damaged in the sum of $4,500.

Defendant, by its answer, denied that the written instrument was, or was intended, or understood to be a contract, and alleged that it was only a memorandum of certain particulars which were to be a part of a contract thereafter to be reduced to writing and executed by both parties; and also denied that plaintiffs had done or performed all, or any, of the provisions or agreements in said supposed contract by them to be done or performed; but that, in March, 1873, they shipped three car loads, or 60,000 pounds, of lead from Baxter to St. Louis by the Atlantic & Pacific Railroad and connecting lines at lower rates than those named in said supposed contract.

To this plaintiffs filed a replication, which was a general denial; and specially pleaded that from January 1st to April 15th, 1873, they shipped, and defendant transported for them, large quantities of lead from Baxter Springs to St. Louis under the terms and provisions of said contract; admitted the shipping by them of three car loads over the Atlantic & Pacific Railroad, but charged that after such shipment defendant, with knowledge of that fact, received and shipped over its road, and under said contract, and prior and up to April, 1873, twelve car loads of lead, for which plaintiffs paid the rates specified in said written instrument.

There was evidence tending to prove that the written instrument sued on was not understood by plaintiffs, or defendant's agent who signed it, to be a contract, but only a memorandum by which one was subsequently to be prepared and executed by the parties, and also evidence to the effect that Col. Coates, president of the defendant company, and plaintiff Riggins, had an interview, in which Coates

alluded to plaintiffs' shipment of lead by the Atlantic & Pacific Railroad, and complained of it as a breach of their contract with his company, and that Riggins said plaintiffs had no contract with the defendant, and that Coates then remarked : · "Then, after this, we will understand it just as you do, and that there is no contract with us ; " that after knowledge of plaintiffs' shipment over the Atlantic & Pacific road was communicated to defendant, plaintiffs were informed by defendant, on the 11th day of April, 1873, that, on and after the 15th of that month, increased rates would be charged, and that, after that notice was given, but before the 15th day of April, plaintiffs made shipments of lead over defendant's road under the contract and paid the price named in the instrument of writing sued on. It was also shown by defendant that the rates named in said writing were the same paid by all shippers of lead from Baxter to St. Louis over defendant's road.

The court, for plaintiffs, instructed the jury as follows:

1.   The paper read in evidence, signed by Hayden, agent, and by Riggins & Chapman, is a valid contract on its face.

2.   It is admitted that plaintiffs and defendant made and signed the memorandum of agreement read in evidence; and although the jury believe that at the time of making the same it was understood that the same should be written out in a more formal shape and thereafter signed by the parties; still if you believe from the evidence that after making the said memorandum, and for two or three months thereafter, plaintiffs delivered to defendant their lead, and defendant received and shipped, or caused the same to be transported from Baxter Springs to St. Louis, under the terms and provisions of said memorandum, then the same was a valid and binding contract between the parties, though never written out in a more formal manner.

3.   If the jury find that plaintiffs shipped, and defendant received and carried, or caused to be transported, for two or three months, plaintiffs' lead from Baxter Springs

to St. Louis, under and pursuant to said contract, and although plaintiffs did, in the month of March, 1873, ship some three or more car loads of their lead over the Atlantic & Pacific Railroad from Minersville; still if you find that after the defendant, its officers or agents, acting within the line of their duties, had notice of such shipments, it, the defendant, received plaintiffs' lead and shipped the same to St. Louis, and so continued to do up to the 15th day of April, 1873, at the rates and under the terms of said contract; and that, after the 15th day of April, 1873, defendant refused to take or transport plaintiffs' lead at a less rate than $71 per car, or 37½ cents per 100 pounds; that plaintiffs then offered to ship their lead over defendant's road at the contract price, and that defendant refused to take or transport the same at such price, then your finding should be for plaintiffs.

4. The jury are instructed that although plaintiffs did in the month of March, ship three or more car loads of their lead over the Atlantic & Pacific Railroad; still if after that plaintiffs went back and shipped over defendant's road; and if after the officers or agents of defendant had knowledge that plaintiffs had shipped said lead over the said Atlantic & Pacific Railroad, it, the defendant, received and shipped plaintiffs' lead for a time under and in pursuance of the contract; then such facts constitute a waiver by defendant of its right to annul said contract on account of plaintiffs having shipped such lead over the Atlantic & Pacific Railroad.

5. If defendant, with knowledge that plaintiffs had shipped three car loads of lead over the Atlantic & Pacific Railroad, thereafter received and shipped several car loads of plaintiffs' lead at and under the terms of the contract, and if the raise in the freight on lead was made thereafter by defendant pursuant to an arrangement by it made with the Atlantic & Pacific Railroad, or between those roads and connecting lines, and not by reason of plaintiffs having shipped over the Atlantic & Pacific, then such facts

constitute a waiver by defendant of its right to annul said contract on account of plaintiffs having so shipped over the Atlantic & Pacific Railroad.

6. If the jury find for plaintiffs, you will assess their damages at the difference between what it would have cost them under the contract to have shipped their lead during the remainder of the year, after the raise in freight thereon by defendant, and what it did cost the plaintiffs to ship their lead during the remainder of such year, less the amount of freight as per terms of contract, on the cars of lead shipped over the Atlantic & Pacific Railroad before the 15th day of April, 1873, with interest on such difference at the rate of six per cent per annum from commencement of this suit.

Appellant asked the court to give four instructions, as follows, to-wit:

1. If, from the evidence, the jury find that plaintiffs understood and believed that the writing dated November 6th, 1872, read in evidence, was not a contract binding on them, but merely a note or memorandum of points or particulars to go into a contract they expected thereafter to make with defendant, and that plaintiffs, in March, 1873, shipped three cars of lead over the Atlantic & Pacific Railroad and connecting lines to St. Louis, and that after such shipment and before the raise of freights on lead in April, 1873, the president of defendant, and the plaintiff Riggins, came to an agreement and understanding that there was no contract or agreement between the plaintiffs and defendant as to the transportation of lead, then the jury must find for defendant.

2. If from the evidence, the jury find that the writing of November 6th, 1872, read in evidence, was understood and believed by plaintiffs not to bind them to ship all their lead over the road of defendant from January 1st, 1873, to January 1st, 1874, but to be merely a note or memorandum of points or particulars to go into a contract the plaintiffs expected to make with defendant some time after

signing said writing dated November 6th, 1872, and that plaintiffs acted on such belief and understanding, then the jury must find for defendant.

3. If, between January 1st, 1873, and the agreement, if any, of the railroad companies raising the freight on lead, the plaintiffs, through Mr. Riggins, and the defendant, through its president, came to an understanding, or agreement, that there was no contract between the plaintiffs and defendant as to the shipping of lead, or that any contract there was between them as to the shipping of lead was at an end, then the jury must find for defendant.

4. If the jury find from the evidence that after January 1st, 1873, and before April 15th, 1873, and before the raise in freights by defendant, Col. Coates, the president of defendant, and the plaintiff Riggins, had a conversation in which Riggins stated, in effect, that plaintiffs had no contract with the defendant for the transportation of lead, and that Col. Coates thereupon stated, in effect, to Riggins, that they would then consider that there was no contract, and that Riggins said, " very well," or words to that effect, then your verdict must be for the defendant.

The court gave instruction No. two, but refused to give instructions Nos. one, three and four, and for the refusal to give them appellant at the time excepted. There was a verdict and judgment for plaintiffs, from which defendant has appealed.

We see no objection to the first instruction for plaintiffs. While the instrument sued on by no means fully expresses the terms of the agreement, it is not difficult to ascertain from the language employed the substance of the stipulations. Defendant was to transport and plaintiffs were to deliver to defendant to be transported for them, at 22½ cents per 100 pounds, all lead shipped by plaintiffs within the year 1873, from Baxter to St. Louis, and although plaintiffs did not bind themselves to ship any lead, they did obligate themselves to ship over defendant's road all they should ship from Baxter to

1. CONTRACT: mutual stipulations: consideration.

St. Louis; and the position that there was no consideration for defendant's promise, is untenable. Plaintiffs' agreement to ship over no other road, and to give to defendant's road all their freight, was a sufficient consideration for defendant's promise. The instrument in question is unlike the proposition by the defendant to the plaintiffs in the *Chicago & G. E. Ry. Co. v. Dane*, 43 N. Y. (1 Hand) 240, and the acceptance there made. As was said by the court: " The latter amounted to nothing more than the acceptance of an option by the plaintiff for the transportation of such quantity of iron by the defendant as it chose; and had there been a consideration given to the defendant for such option, the defendant would have been bound to transport for the plaintiff such iron as it required within the time and quantity specified, the plaintiff having its election not to require the transportation of any." We think that case no authority for the position of appellant's counsel here.

The second instruction for plaintiffs asserts a doctrine well sustained by the authorities. *Paige v.*

2. ——: informal memorandum of agreement.

*Fullerton Woolen Co.*, 27 Vt. 485; *Miller v. McManis*, 57 Ill. 126.

The third instruction, with respect to the violation of the agreement by plaintiffs in shipping lead over the At-

3. ——: railroad transportation: waiver.

lantic & Pacific road, and the waiver by defendant of said breach of the contract, fairly submitted that question to the jury in both of its aspects. It required the jury to find, not only that after said violation of the contract by plaintiffs, they shipped lead over the defendant's road from Baxter to St. Louis, but that such shipping was done after defendant was aware of the alleged breach of the contract by plaintiffs, and at the rate and under the terms of said contract. And although the rate given plaintiffs, by the contract, was the same as that given to shippers generally, and, as a common carrier, defendant could not have refused to receive freight offered by plaintiffs to be carried at that rate, yet, if under and in pursuance of the contract, and not under this general lia-

bility as a common carrier, the defendant received the lead at Baxter to be transported to St. Louis, after the breach on plaintiffs' part, and with knowledge of such breach, it was a waiver by defendant of said breach of contract by the plaintiffs. For the same reason the fourth and fifth instructions for plaintiffs are correct.

The first instruction asked by defendant was properly refused, because, if the instrument of writing sued on was 4. RESCISSION OF not a complete contract when it was signed, contract: plead-ing. and the contract contemplated by the parties was never concluded, then, without regard to the understanding subsequently had between Coates and Riggins, the defendant was not bound. If, on the other hand, the written instrument was, when signed, a complete contract, or became so by the subsequent conduct of the parties, as submitted in the second instruction for plaintiffs, then the understanding between Coates and Riggins could only have operated as a rescission of the contract, and no such defense was relied upon in the answer. The same observations apply to the third and fourth of defendant's refused instructions. The defendant did not plead a rescission of the contract, but denied its existence, and also alleged that plaintiffs had violated it. Under such pleading defendant could not avail itself of a rescission of the contract.

Intricate questions of fact were involved in the case, but they seem to have been fairly submitted to the jury by the instructions of the court, and the judgment is affirmed. All concur.