RUDOLPH MUNZER AND FREDERICA ZIMMERMAN v.
HENRY STERN.

*Fraudulent purchase—Rescission—Replevin—Return of property—
Evidence.*

1. With a view to the amicable settlement of differences which had arisen between the vendors of a lot of goods and the vendees, the vendors claiming that the goods were fraudulently purchased, an agreement was entered into under which the vendees returned to the vendors a portion of the goods, and were to pay for the remainder upon the terms of the original sale, in consideration of which the vendors were not to bring suit for the recovery of the goods so retained until the bill for the same became due. Sixteen days after entering into said agreement, the vendees gave a trust mortgage on their entire stock to secure certain alleged creditors, most of whom were relatives of one or the other of the vendees. In replevin by the vendors for the goods so retained, there was evidence to support the conclusion, which the jury must have reached in rendering a verdict for the plaintiffs, that the vendees made the original purchase with intent to defraud, and that they entered into said agreement with intent to retain the goods not surrendered for the like purpose. And it is held that the plaintiffs were justified in rescinding the contract and retaking the goods.

2. It was not necessary for the plaintiffs to return the goods sur-

rendered to them by the vendees before bringing replevin for the goods which the vendees retained.

3. Testimony is not admissible to rebut a statement made by counsel in his opening to the jury which there is no evidence to sustain.

4. It was error to permit the plaintiffs' attorney to testify to a statement, made by the representative of other vendors in the absence of the vendees, of a conversation he had with a stranger in a street car that he had sold the vendees a large bill of goods, and that the representative further said that he had ascertained that the vendees had purchased several thousand dollars worth more than they had gotten of him.

Error to Kalamazoo. (Buck, J.)  Argued May 1, 1895. Decided May 28, 1895.

Replevin.  Defendant brings error.  Reversed.  The facts are stated in the opinion.

*Howard & Roos* and *Boudeman & Adams*, for appellant.

*Osborn, Mills & Master*, for plaintiffs.

GRANT, J.  A firm by the name of Livingston & Block was engaged in the dry goods and retail cloak business in the city of Kalamazoo.  In the summer of 1893 plaintiffs sold to this firm cloaks of the value of $2,728.50, shipping the same in July or August.  About August 29 the plaintiffs learned that Livingston & Block had purchased a much larger amount of goods than formerly, and that they had been shipping goods away.  Munzer thereupon went to Kalamazoo; intervewed Livingston & Block; at first tried to obtain payment, although the purchase price was not due until January following, by informing Livingston & Block that they were in need of money, and offering a large discount for cash payment, and, failing in this, charged them with shipping away goods, and demanded a return of at least a part of the goods which plaintiffs had sold to them.  Livingston & Block admitted to Munzer that they had shipped away goods, but none purchased of the plaintiffs, and there is no evidence

that at that time they had done so. Livingston & Block refused to surrender any of the goods, and Munzer returned to Chicago, leaving the matter in charge of plaintiffs' attorneys, Osborn & Mills. Mr. Mills shortly thereafter interviewed Livingston & Block, and testified that he informed them of plaintiffs' claim that they had purchased more goods than usual, and had shipped goods away, and that Mr. Block denied having shipped away any goods. At the second interview Mr. Mills informed Livingston & Block that he was instructed to replevin the goods, and should do so at once unless a compromise was effected, whereupon a proposition was made, which. was submitted to plaintiffs by their attorneys, assented to by them, and on September 2, 1893, incorporated into the following contract:

"*Whereas*, R. Munzer & Company, of Chicago, Illinois, has heretofore sold and shipped to Livingston & Block, of Kalamazoo, Michigan, two bills of cloaks, one amounting to $71 and one to $2,657.50, said bills being dated December 1, 1893, due in 30 days, with 7 per cent. discount if paid in 10 days and 6 per cent. discount if paid in 30 days; and

"*Whereas*, a misunderstanding has arisen between the parties in regard to said bills of cloaks; and

"*Whereas*, it is desired by all parties to settle said differences amicably:

"Now, therefore, it is hereby agreed between the parties that said Livingston & Block shall return to said R. Munzer & Co. $1,600 worth of said cloaks, and that the same shall be received by R. Munzer & Co. in payment of said bills to that amount, and that said Livingston & Block shall keep the balance of said cloaks, and shall pay for the same upon the terms of the original sale; that is to say, they shall pay for the same on January 1, 1894, and by so doing said Livingston & Block have a discount of 6 per cent., and, if said Livingston & Block so desire, they may pay for said cloaks on December 10, 1893, less a discount of 7 per cent. The cloaks that are to be reshipped to R. Munzer & Co. are to be shipped this day. And in consideration of the foregoing said R. Munzer & Co. are not to bother or disturb said Livingston & Block in the possession of the cloaks retained by them, or to bring

suits for the recovery thereof, until the bill for the same becomes due, as herein agreed."

Livingston & Block reshipped the goods according to this contract. On September 18 Livingston & Block executed a chattel mortgage on the entire stock to the defendant, Stern, as trustee, to secure certain alleged creditors, most of whom were relatives of either Livingston or Block. Between that date and the close of the month 15 replevin suits were brought against Stern by the creditors of Livingston & Block to recover goods claimed to have been purchased fraudulently. Plaintiffs also brought this suit of replevin, and recovered $849 worth of their goods out of $1,128.50. Verdict and judgment were for the plaintiffs.

1. The defendant requested the court to direct a verdict for the defendant, for the reason that under the evidence the plaintiffs were fully advised of the circumstances and conditions surrounding the case, and entered into the compromise agreement with full knowledge of the facts. The court instructed the jury that the plaintiffs by this agreement waived every right to bring suit in replevin because of any claim on their part that the goods were fraudulently purchased, and that they could not repudiate the agreement unless they had shown that the plaintiffs or their agents were misled into making such agreement by reason of some fraud practiced by Livingston & Block, and that they must show that some active fraud was perpetrated to induce them to enter into said agreement. We think the instruction was correct. If the jury believed the evidence on the part of the plaintiffs,—which, of course, they did,—they were justified in reaching the conclusion that this compromise agreement was not entered into in good faith by Livingston & Block; that they were then hopelessly insolvent; that they had purchased, at a time when business was depressed, nearly five times the usual amount of their purchases, that they did this without intending to pay for them; that they themselves, without the knowledge of their clerks,

secretly packed and shipped a large amount of goods to fictitious consignees; and that they sold goods at cost less a discount of from 10 to 18 per cent., and that some were shipped in the original packages. There was other evidence upon this point, which it is unnecessary to state. These things. were done within a few days after the receipt of the goods. Plaintiffs had the right to assume that this agreement was made with a view to the continuance of their business, whereas the evidence on plaintiffs' part tends strongly to show that they had no such intention. There was evidence to sustain the finding not only that they purchased these goods and others with intent to defraud, but also that they entered into this agreement with intent to retain the goods mentioned therein for the like purpose. In such case the plaintiffs' were justified in rescinding the contract and retaking their goods.

. 2. It was not necessary for the plaintiffs to offer to return the goods obtained by the agreement before bringing replevin for the remainder. Such action would be an idle ceremony, not required by the law. Neither does the law require a party to tender back or surrender that to which he is entitled. Livingston & Block had paid nothing. Their purchase was fraudulent. Both the original purchase and the compromise agreement were tainted with fraud. By retaking the remainder of the goods, the plaintiffs placed themselves in the situation in which they were before the perpetration of the fraud, and this was their clear legal right. The general rule requiring the surrender, or offer to surrender, what has been received, upon the rescission of a contract voidable for fraud, is not one of universal application, and has many exceptions. It does not require unreasonable or impossible things to be done. *Sloane v. Shiffer*, 156 Penn. St. 59, 65; *Insurance Co. v. Hull*, 51 Ohio St. 270; *Pearse v. Pettis*, 47 Barb. 276; *Smith v. Salomon*, 7 Daly, 216; *Montgomery v. Pickering*, 116 Mass. 227. The rule has no application to the present case.

3. The only remaining question arises upon the admissibility of evidence. Mr. Mills was permitted to testify to a conversation between himself, Mr. Munzer, and one Einstein, who represented a New York firm who had sold goods to Livingston & Block. Livingston & Block were not present, and, among other things, Mr. Mills testified to a statement made by Einstein of a conversation he had with a gentleman, whose name was not given, upon a street car in New York, that he had sold Livingston & Block a large bill of goods, and that Mr. Einstein further said that he ascertained that they had purchased several thousand dollars more than they had gotten of him. It is attempted to support its admission upon the opening statement to the jury of counsel for defendant that they would show that Mr. Munzer was the sole cause of all the difficulty in which Livingston & Block were involved, and that he had written to various creditors for the express purpose of breaking up their business. It was furthermore insisted that this conversation was substantially told to Livingston & Block by Mr. Mills. The admission of the testimony cannot be justified under any rule of evidence. The opening statement of counsel did not make it competent. It was hearsay. Testimony is not admissible to rebut a statement made by counsel which there is no evidence to sustain. We do not find that the most damaging statements in this conversation were repeated to Livingston & Block by Mr. Mills. The record states that the defendant introduced evidence tending to controvert that given by the plaintiffs. We do not, therefore, feel at liberty to hold that this was error without prejudice.

For this reason judgment must be reversed, and a new trial ordered.

McGrath, C. J., Long and Montgomery, JJ., concurred. Hooker, J., did not sit.