**PETERSON et ux. v. A. GUTHRIE & CO. et al.**

**No. 20481.**

District Court, W. D. Washington, N. D.

April 14, 1933.

plaintiffs were not advised as to the true status of the wife's condition and were misled by statements of plaintiff's legal status in relation to the wife's presence at the place of injury, as disclosed by the evidence: (a) That she herself was a wrongdoer by trespassing on defendant's property and could not recover; (b) the testimony shows that she was present as by implied license; (c) and were permitted to believe, when she should have been otherwise advised, that the eye injury, while severe, was not total blindness.

There is no doubt in my mind that plaintiffs were kept in ignorance of the fact of the loss of sight in the eye. The plaintiffs were young, inexperienced, ignorant of the law or right, if any, which they had. There was no negotiation. They had no opportunity to obtain legal advice or consult friends. They were poor and worried about the injuries and the expenses, all of which the agent knew. The husband was still in the employ of the defendant company.

The claim agent was a man of long experience in settling claims (15 years), and shortly after the plaintiff Naomi Peterson was taken from the hospital, where she had been for 8 days, to plaintiffs' home, the claim agent and the immediate superior of the husband plaintiff, who had authority to retain or discharge him, which was known to plaintiff, called at the home of the plaintiffs, without appointment, and the claim agent told the plaintiffs that the wife had no right to be at the place where injured, and that she had no enforceable claim, but that the defendants would pay the hospital, doctor, and nurse expenses if they would sign a release of all claims; and stated they had but a little time and were in a hurry to get away. The immediate superior told plaintiffs it would be better for them to sign the release; whereupon the release was signed after the plaintiffs had conferred by themselves for a brief time. The superior thereafter did give the husband more desirable employment while his work continued.

I am satisfied that plaintiffs believed that she had not lost sight of the eye, and the agent knew this, and by apparent friendly manifestations of interest in plaintiff's behalf by the claim agent, and friendly advice of the husband's superior that it would be better for them to sign the release, the receipt above set out, which had been prepared at the office of the claim agent, was produced, and signed by the plaintiffs. No money was paid to the plaintiffs. Thereafter, however, $10 was sent to the plain-

Vanderveer & Bassett, of Seattle, Wash., for plaintiffs.

Thomas Balmer, Edwin C. Matthias, and Charles S. Albert, all of Seattle, Wash., for defendants.

NETERER, District Judge (after stating the facts as above).

I am constrained to the conclusion that there was a mistake of a past and present existing fact, and that the plaintiffs were misled against their will in the execution of the release by statements, representations, and conduct of defendant's agents, in that the

tiffs to pay for nurse service in the home of the plaintiffs. The doctor's fee and hospital charge were paid by defendants.

The receipt, no doubt, was signed because of what plaintiffs believed, imminent necessity, because of the expense and belief that the eye was not destroyed (Schofield, defendant witness, in answer to a question whether the doctor told plaintiff that she would lose the sight of her eye, said, "No, not permanently"), and fear of loss of position—under what, "for lack of a better term, we may call business compulsion." Johnson v. Townsend & Co., 161 Wash. 332, 296 P. 1046, 1047, reaffirming Duke v. Force, 120 Wash. 599, 208 P. 67, 23 A. L. R. 1354.

It is plain to me that an unjust advantage was obtained by the agents for the defendants by skill, cleverness, and artifice, and the credulity and simplicity of plaintiffs overreached, and that they were thereby induced to do unwittingly that which they did not understand or intend, and, if permitted, would be shocking to equity and good conscience.

The Supreme Court of Washington in Stone v. Moody, 41 Wash. 686, 84 P. 617, 619, 85 P. 346, 5 L. R. A. (N. S.) 799, stated: "Where it is to the court perfectly plain that one party has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable and unrighteous to permit him to enforce, we do not believe that a court of equity should hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness. * * * And the evil effect of court decisions which permit the wrongdoer to enjoy the fruits of his chicanery is of no small import when viewed from the standpoint of public policy."

This was approved by the Court of Appeals of this circuit in Fiorito v. Clyde Equipment Co. 2 F.(2d) 807, at page 809. The Supreme Court of the state in Hicks v. Jenkins, 68 Wash. 401, 123 P. 526, 528, held fraud will be presumed where the inadequacy of consideration is very gross. "When the inequality is so great as to shock the conscience, the mind cannot resist the inference that the bargain must in some way have been improperly obtained." In Great Northern Railway Co. v. Fowler, 136 F. 118, the Court of Appeals in this circuit concluded, in effect, the same by holding a release for injury, executed by mutual mistake of the parties, where it subsequently developed that a hazardous and delicate surgical operation was required. In the instant case the loss of an eye was paid for by a mere "mess of pottage," and falls clearly within Great Northern Ry. Co. v. Fowler, supra.

But it is said there has been no return of the money paid on the claims for the hospital, for the doctor, and for the nurse. Thornton v. P. S. P. & L. Co. (D. C.) 49 F. (2d) 347; The Thomas P. Beal (D. C.) 298 F. 121; Price v. Connors (C. C. A.) 146 F. 503; Hill v. N. P. Ry. Co. (C. C. A.) 113 F. 914; Mahr v. U. P. Ry. Co. (C. C. A.) 170 F. 699; Cook v. F. & D. Co. of Md. (C. C. A.) 167 F. 95; U. P. Ry. Co. v. Syas (C. C. A.) 246 F. 561; Johnson v. Chicago, M. & St. P. Ry. Co. (D. C.) 224 F. 196. Only $10 was subsequently sent to the plaintiffs to be paid to the nurse employed in their home. The other money was paid to the hospital and doctor who cared for the injured in defendant's employ. A statement of the amount has not been rendered to plaintiffs. The plaintiffs should return or tender the $10, which was sent to them, but the failure to so tender before bringing this action should not defeat this suit. The other amounts, when proven, must be deducted from any allowance which may be made. There is no other alternative, as both receipt and answer are silent as to the sum.

The affirmative defense of release under title 28 USCA, § 398 (section 274b, Jud. Code), is an equitable defense, and the reply charging fraud is not creating a new cause of action; it is an incident arising in the instant cause of action, which is a lawful demand for a claimed right. The action is a suit at law to recover that which plaintiff claims is due for acts of commission or omission in performance of imposed duty. The complaint, answer, and affirmative answers and the reply make the issue. The reply to the affirmative answer of release are incidental to the main issue, and, many courts hold, should be submitted to the jury as defense. Fraud in obtaining the release was properly raised in the reply. Wagner v. National Life Insurance Co. (C. C. A.) 90 F. 395. By this action the integrity of the release was challenged, as fully as though an independent action had been begun, for it bears directly on the right of recovery.

The claim of plaintiffs for damages and the claim of defendants of nonliability or of release thereof by settlement make one issue to be determined in one action.

Action is the form of a suit given by law for the recovery of that which is one's due; the lawful demand of one's right. The plain-

tiff files his complaint, the defendant his answer, and, if necessary, his counterclaim or notice to third parties. The plaintiff files or serves his reply or demurrer, etc. This is joining of issue, and then the right is determined by ascertaining the facts by trial or reference. Section 504, Co. Litt. a.

The release does not destroy the right of action, but merely bars recovery of damages. The integrity of the bar is challenged when the action for damages was commenced, and was a question for determination at trial, Bjorklund v. Seattle Electric Co., 35 Wash. 439, 77 P. 727, 1 Ann. Cas. 443, and by this rule of the state the statute of limitations could not be raised against the claim unless the right of action is barred, and should have the same effect under title 28 USCA § 398, as an equitable defense.

This court must be governed in limitation by the decisions of the state court where the action arose. Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 14 S. Ct. 842, 38 L. Ed. 802. In the state court the challenge to the release was not barred, and this court should give effect to the same rule. Dupree v. Mansur, 214 U. S. 161, 29 S. Ct. 548, 53 L. Ed. 950. While these cases are not on the statute of limitation, by analogy the announced rule applies to the instant case.

On payment or tender to defendants of $10, an order declaring the release as of no effect may, on notice, be presented.