## JACK MANN CHEVROLET CO. v. ASSOCIATES INV. CO.

### No. 8835.

Circuit Court of Appeals, Sixth Circuit.

Feb. 11, 1942.

[2] H.Rep. No. 728, 76 Cong. 1st Session p. 2, 18. S.Rep. No. 793, 76 Cong. 1st Session, p. 2, 19. H.Conference Rep. No. 1461. 76 Cong. 1st Session p. 20.

Edward N. Barnard, of Detroit, Mich. (Max E. Klayman, of Detroit, Mich., on the brief), for appellant.

Elroy Jones, of Detroit, Mich. (Dykema, Jones & Wheat, of Detroit, Mich., on the brief), for appellee.

Before SIMONS, MARTIN, and Mc-ALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

This is an appeal from a judgment on the pleadings of no cause of action on the complaint of appellant, and a summary judgment in favor of appellee.

On December 3, 1937, Associates Investment Company, by virtue of claimed rights

under chattel mortgages, repossessed automobiles and other personal property from Jack Mann Chevrolet Company. On December 4th, appellant filed its bill of complaint in the Circuit Court for Wayne County and, on allegations that the Investment Company had wrongfully seized the property, secured an order temporarily restraining appellee from selling the repossessed automobiles.

Thereafter, conferences were held between the parties, resulting in the execution of an agreement providing that certain automobiles which were repossessed, upon which there were no chattel mortgages, but which were covered by a so-called blanket mortgage, would be returned immediately to the Mann Company on payment of $568.-75. This amount was paid by appellant and the cars in question returned. It was further agreed that certain used cars, which were repossessed, would be sold by the Investment Company on specified dates, at a stated address, in Detroit, with the right of the Mann Company to withhold from the sale any of such cars, until successive auctions, but in no event would the number of cars so withheld from any sale, exceed 50% of the total number of cars offered for sale at such an auction.

Under the terms of the agreement, the Mann Company waived any notice of sale provided for in the mortgages, or in federal or state statutes, and released the Investment Company from any claim that it had at that time, or might thereafter have, arising out of the repossession of the automobiles under the blanket mortgage. It further waived any of its rights under the terms of any chattel mortgages for new cars, or under any state or federal statutes, requiring notice of sale of any new automobiles included in any chattel mortgages; and the Investment Company was authorized to dispose of any new cars it had seized, at public or private sale, without further notice. Upon the execution of the settlement agreement, the attorney for the Mann Company moved to dismiss the bill of complaint which had been filed to restrain the sale, and on December 9, 1937, the bill and order to show cause why the sale should not be restrained, were dismissed by the Circuit Court of Wayne County. The new and used cars were then sold by the Investment Company, but instead of conducting auctions for the used cars in Detroit, as provided for in the agreement, the cars were sold in Ohio. The Investment Company claims that be-

cause of market conditions, it was found more advantageous to sell the cars in that state, and that appellant was advised of the situation and had a representative present at these sales in order to withhold used cars from sale until successive auctions, under the terms of the contract.

On September 12, 1939, approximately 21 months after the execution of the settlement agreement and the sale of the automobiles by the appellee company, the Mann Company commenced an action at law, in the Wayne County Circuit Court, against the Investment Company, claiming judgment in the amount of $100,000.00. The declaration was on the common counts, with a bill of particulars, setting forth a claim to an equity in automobiles alleged to have been converted by the Investment Company, in the amount of $15,525.50; an amount due on Dealer's reserve and Dealer's acceptance, of $4,475.00; and a claim for loss of profits and damage and injury to the business of the appellant, due to appellee's wrongful conversion, in the amount of $80,000.00. On application of the appellee, the cause was removed to the District Court, and a motion was filed on behalf of the Investment Company for a more definite complaint and bill of particulars. On order of the District Court, sustaining the motion of the Investment Company, an amended complaint was filed by the Mann Company, containing three counts. The first count was based upon wrongful conversion of the automobiles sold by appellee under the settlement agreement, and claimed $20,000.00 damages; the second count claimed damages of $80,000.-00 for the total destruction of appellant's business, resulting from the alleged wrongful conversion; and in the third count, appellant claimed judgment in the amount of $5,000.00 on the common counts.

Thereafter, the Investment Company filed another motion for a more definite complaint and bill of particulars. In its motion, it asked that the Mann Company set forth, with particularity and definiteness, the facts with regard to the alleged conversion, and stated that it did not know what appellant claimed with reference to the settlement agreement in which the Mann Company released the Investment Company from any claims in connection with the repossession of the automobiles. It further asked that the allegations with regard to the claim set forth in the bill of particulars for "Dealer's reserve and Dealer's acceptance," be made more definite.

On a second order of the District Court, requiring appellant to file a more detailed complaint and bill of particulars, amendments to the amended complaint were filed, in which the Mann Company alleged that the Investment Company, after seizing the automobiles, removed them from the state of Michigan to the state of Ohio, "and there sold and disposed of said automobiles, contrary to the will of plaintiff, and has failed, neglected and refused to give any accounting thereof to plaintiff." It was further set forth that the Mann Company predicated no rights on its original suit for conversion, and made no claim for damages on account of any violation of the settlement agreement.

It was alleged, however, upon information and belief, that the Investment Company, at the time of entering into the settlement agreement, did so in bad faith and without any intent upon its part to abide thereby, and appellant set forth "that almost immediately after such settlement agreement had been entered into, defendant proceeded to violate the same, did not dispose of the said automobiles on the scheduled time and basis set forth in such agreement, but, on the contrary, proceeded to dispose of the said automobiles without regard to the provisions of such agreement." It was further alleged that the conversion relied upon by appellant, consisted of the wrongful taking of possession and seizure of the automobiles by the Investment Company on December 3, 1937, and that because of the bad faith of the Investment Company in entering into the agreement, "such settlement agreement is, therefore, void and of no effect."

With regard to the item of $4,475.00 set forth[1] in the bill of particulars as "Dealer's reserve and Dealer's acceptance," it was stated that the Mann Company arrived at such amount by relying upon the books and records of the Investment Company, which showed that appellant was entitled to a credit in that amount with respect to such account, and appellant stated that it was content to rely upon the credit so appearing on appellee's books.

To such amended complaint, the Investment Company filed its answer, stating that the automobiles in question had been subject to a chattel mortgage; that they were sold for a sum less than the amount due upon them; that the Mann Company had no equity in the cars but was chargeable with a loss on the sales; that a settlement agreement had been entered into, in which it was agreed that the Investment Company would sell the used cars in question at public auction, with the right and privilege of the appellant to withhold sale of any used cars up to 50% of the total number offered at auction, and that the remaining cars were to be offered at successive auctions; that the Mann Company had waived notice of sale and that, upon execution of the agreement, had released the Investment Company of any claims that it then had or might thereafter have, arising out of the repossession of the automobiles. It was further alleged that the settlement agreement was a full and complete release of any alleged rights that the appellant had, arising out of the repossession; that the automobiles in question had been disposed of in Ohio with the full knowledge and permission of the appellant; that the Investment Company had given appellant a complete accounting for the automobiles sold; and that an agent of the appellant attended all of such sales in the state of Ohio. In further answer, the Investment Company claimed that instead of a credit in favor of appellant on its books, there was a deficit in the amount of $5,982.13. Appellee then filed a counterclaim for $5,982.13 for losses incurred in the sale of the repossessed cars. The Investment Company moved for a judgment on the pleadings of no cause of action on the amended complaint of the Mann Company, and for a summary judgment, supported by affidavit of amount due, on its counterclaim.

In reply to such motion, the Mann Company repeated that the settlement agreement was procured by the fraud of the Investment Company; that with reference to the credits as shown on the books of the Investment Company, it admitted the record of only those credits legitimately incurred by appellant, and not sums determined by appellee after its wrongful and unlawful conversions. On the pleadings, the District Court entered judgment of no cause of action on the claim of the Mann Company and granted the motion for summary judgment on the counterclaims of the Investment Company.

The determination of this case calls for examination of the principles applicable when remedies are sought for fraud in the execution of a contract.

Appellant claims that the repossession of the automobiles by appellee was a wrongful conversion. It further claims that the subsequent agreement discharging appellee from all claims on account of such repos-

session was procured by fraud, in that appellee never intended to carry out the terms of such agreement. It, therefore, contends that it may maintain its suit for conversion arising out of the repossession, in spite of the settlement, on the theory that, because of the fraudulent procurement of the settlement, it is of no effect and is not a bar to the suit.

■ When a party is defrauded by means of a contract, he may rescind and ask to be placed in statu quo, or he may affirm and sue for damages resulting from the fraud. In addition, he may ask enforcement of the kind of contract which the fraudulent party represented he was making. Williston on Contracts, Revised Edition, Sec. 1523.

■ In this case, appellant expressly states that it is making no claim for damages because of the settlement agreement; and there is no attempt to enforce any contract which appellee is claimed to have represented as being made. Therefore, in order to recover on its claim of conversion, appellant must show that the contract of settlement, discharging all claims arising from the repossession of the property, was void or voidable. If it was void, it was of no legal effect and, consequently, was not a release of any claims arising out of appellee's wrongful seizure of property.

If the release was voidable, appellant, in order to recover, must show that it was rescinded and that it is, therefore, entitled to judgment for the wrongful conversion.

■ In order to rescind, a party must promptly so elect, and notify the opposite party, and adhere to the position taken. Brite et al. v. W. J. Howey Co. et al., 5 Cir., 81 F.2d 840. In Danto v. Charles C. Robbins, Inc., 250 Mich. 419, 230 N.W. 188, it is said that it is elementary that a person, claiming to be defrauded, must elect to rescind, or not, immediately after he discovers the fraud, although he should have a reasonable time in which to discover whether representations were false. The law does not require action to rescind before a party is reasonably certain that he has been defrauded. Bailey v. Perkins, 224 Mich. 27, 194 N.W. 558. What is a reasonable time in which to rescind, depends upon the circumstances of the particular case (Gyles v. Stadel, 252 Mich. 349, 233 N.W. 339); and Professor Williston, in his work on contracts, is of the opinion that promptness in rescission is to be required only where the party seeking rescission has received money or property, which he must restore as a condition of relief, or where there is further performance due under the contract from the other party, which, in the absence of notice, he might suppose would be accepted in spite of his prior breach (§ 1469); although this is not the rule generally expressed in the cases on rescission. But, unless the conduct of the parties makes it unnecessary, a party who wishes to rescind, must manifest his election in some way. Hennessy v. Bacon, 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605. However, if a party does not elect to rescind and unequivocally notify the opposite party to such effect, he becomes conclusively bound by such contract. See City of Del Rio v. Ulen Contracting Corporation, 5 Cir., 94 F.2d 701. Rescission is an equitable right, and where it is to be exercised on the ground of fraud, a party must give notice of such rescission. Wright v. Bristol Patent Leather Co., 257 Pa. 552, 101 A. 844. Formal notice is not always requisite. It is not necessary to use the word "rescission" in order to rescind. The way in which an election must be manifested, may vary in different cases; and bringing an action promptly for restitution, is generally held sufficient. See Williston on Contracts, § 1469.

■ Thus, in Duncombe v. Tromble, 219 Mich. 8, 188 N.W. 367, where defendant, after accepting a payment and giving a receipt on the sale of a specified lot in a subdivision, insisted that plaintiff execute a contract with building restrictions and obligations to build within a limited time, and plaintiff refused and, within a few days thereafter, sued in assumpsit to recover the payment, it was held that the suit operated as notice that plaintiff refused to proceed under the new terms, and as a demand for the return of his money. Under the circumstances, the suit was held to be a sufficient evidence of rescission; and this is consonant with the rule based upon what has been referred to as "fictitious inferences" that defendant's refusal to perform the contract to sell, indicated his assent to rescind it and restore what had been given under it. See Williston on Contracts, § 1455; and in Crowley v. McCullough, 254 Mich. 362, 237 N.W. 50, where defendant agreed to pay a certain sum to plaintiff as manager of a syndicate engaged in real estate operations, and afterward learned that plaintiff had paid less for land which he had transferred to the syndicate than he

had represented, it was held that, where plaintiff sued, on refusal of defendant to make further payments, defendant could set up the fraud and ask recoupment. In that case, judgment for defendant was affirmed on the ground that defendant's refusal to make further payments and his claim for recovery of the amounts paid, amounted to a repudiation of the syndicate agreement. That case, however, concerned an executory, or partly executory, contract, where refusal to continue performance, and demand for money paid, could be deemed an election to rescind. In the case of executory contracts, it is said that a refusal to perform obligations thereunder, and defense of an action brought thereon, are all that the defrauded party can do by way of asserting his right to disaffirm the contract, and, unless his silence or delay has operated to the prejudice of the other party, he may assert his right when his adversary first asserts his claim by action. Williston on Contracts, § 1526.

In Black on Rescission and Cancellation, Vol. 2, § 574 (1937), the general rule is laid down as follows: "To be effective, a notice for the rescission or termination of a contract must be clear and unambiguous, covering an unquestionable purpose to insist on the rescission, and where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so." A release or contract of settlement of a disputed claim, when timely pleaded, is a bar to an action on such claim so long as it is not rescinded, and this is the rule where the release was procured by fraud, as such a release is not void but merely voidable. Pelletier v. Phoenix Mutual Life Insurance Co., 49 R.I. 135, 141 A. 79.

Where a party has entered into a voidable contract and wishes to be restored to the rights he possessed before the contract was executed, he must promptly disaffirm the contract; and where allegations would not be sufficient in a direct proceeding in equity for rescission, they are not sufficient for rescission in an action at law. See Citizens' Street R. R. Co. v. Horton, 18 Ind.App. 335, 48 N.E. 22. "Particularly stringent is the rule of promptness when an election to rescind an agreement for fraud is presented by a discovery of it. In such a case one must promptly elect to rescind and so notify the opposite party * * *." Holman v. Gulf Refining Co., 5 Cir., 76 F.2d 94, 99. There is no claim that any notice of rescission was given by appellant.

In suits seeking to avoid the effect of fraudulent contracts, pleading is of utmost importance. In such a case, this consideration is not a matter of technicality, for both the nature of the proofs and the amount of the recovery depend upon the theory upon which the suit is brought and the claim that is made; and these are revealed only in the pleadings. If rescission be relied upon as a defense to a contract, it must be specially pleaded. Proof of the fact will not be admitted under a pleading which only denies the making of the contract, and also avers a breach of it. Riggins v. Missouri River, etc., R. R. Co., 73 Mo. 598; and where an action is brought on a contract and it is claimed on the trial that it was rescinded, this is an affirmative defense and should be pleaded in the answer. Denney et al. v. Stout, 59 Neb. 731, 82 N.W. 18.

In an action on a contract, release is new matter constituting a defense and, if relied upon, must be specially pleaded. Maxon v. Gates, 136 Wis. 270, 116 N. W. 758. Where the defense rests on a rescission or mutual abandonment of a contract, the issue is whether the contract has ceased to have legal existence or has been terminated by reason of events occurring subsequent to the inception of the contract. It is a distinct and substantive ground of defense which must be alleged in the answer if a defendant seeks to avail himself of it in order to defeat recovery on a contract. Mark v. Stuart-Howland Co., 226 Mass. 35, 115 N.E. 42, 2 A.L.R. 678. Under Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in pleading to a preceding pleading, a party is required to set forth affirmatively any matter constituting an avoidance or affirmative defense.

A defense to a contract on the ground that it was obtained through fraud, is not the same as a defense which alleged that the contract was rescinded. The former admits the existence of the contract. "But it is otherwise, where the defence rests on a rescission of the contract. In such case the issue is that the contract has ceased to have any legal existence, not by reason of fraud or falsity in its inception only, but by reason of such fraud and falsity, in connection with other and distinct acts in pais, by which it has been terminat-

ed. If this defence is established, the action on the contract cannot be maintained. It follows that it is a distinct and substantive ground of defence, which is not embraced by mere allegation of fraud in procuring a contract, and that it must be alleged in the answer according to the provisions of the practice act, if a defendant seeks to avail himself of it in order to defeat a recovery on a contract." Fogg et al. v. Griffin et al., 2 Allen 1, 84 Mass. 1.

■ An examination of the pleadings does not reveal that appellant ever claimed that it had rescinded the contract of settlement, or relied upon rescission as a defense to the contract. On this proposition, appellant argues that it is not necessary to resort to a proceeding in equity to void a settlement agreement, and that it is proper to meet the claim of release by allegations that the contract was induced by fraud. The correctness of this contention may be conceded, but this in no way excuses disregard of the requisites, pleadings, and proofs which are necessary to establish, on the one hand, damages, or on the other, rescission. In an action at law, either a counterclaim for damages for fraud, or a rescission of the contract, may be pleaded in answer to a defense of release or settlement. But in the event that it is sought to show that a release was rescinded, it is necessary to rely upon some theory or claim of rescission.

In Wagner v. National Life Insurance Co., 6 Cir., 90 F. 395, 404, cited by appellant, it was held proper in an action at law to avoid a release by a reply of fraud. The court said that in the case of a contract of sale of personal property, a party may rescind the sale for fraudulent misrepresentation as to any material fact inducing him to enter into the contract and, if sued on the contract, may plead such rescission and justify it. The court then asked: "Why may not one on the same ground and in the same way rescind a release, or, when it is produced against him as a bar to an action, avoid it by showing the fraud?" Appellant relies upon the above case as authority for its contention that the mere allegation that the release was procured by fraud, presents a question of fact as to whether the release was void. But there is no implication to be found from the language in this decision that a release can be voided, except by rescission.

In Patterson v. Cincinnati, etc., Railway Co., D.C., 5 F.Supp. 595, cited by appellant,

the court stated that fraud in inducing a contract of release of a cause of action could be set up as a defense, but observed that the release in that case should have been repudiated before bringing the cause of action. The release was held to be a defense.

In Peterson v. A. Guthrie & Co., D.C., 3 F.Supp. 136, cited by appellant, it was held that where a defense of release was pleaded in an action for damages for tort, a plea that fraud had been exercised in securing the release was good, although there was no rescission. But the court found that the release had been procured by artifice, and that the party giving the release was prevailed upon to do what he did not understand or intend to do, and if the settlement was permitted to stand, it would be shocking to equity and good conscience. In such a case, the court considers that no release has been executed. But the converse of this rule is shown in Randall v. Port Huron, etc., Railway Co., 215 Mich. 413, 184 N.W. 435, in which it was said that where it is contended that a release from claims for personal injuries was procured by fraud, the release is a defense, unless rescinded, when it appears that the party executing it knew what he was signing and what he was settling; and the mere commencement of the suit on the original claim is not equivalent to a rescission. In the present controversy, we are not concerned with the rule applicable when a party executed a contract which he is fraudulently induced to believe is something different than what is agreed upon. Here, appellant executed the release, knowing exactly what it provided.

Munzer v. Stern, 105 Mich. 523, 63 N.W. 513, 29 L.R.A. 859, 55 Am.St.Rep. 468, cited by appellant, is a replevin case involving the retaking of property procured by fraud. The holding of the court is that, upon rescission of a contract voidable for fraud, the general rule requiring offer to surrender what has been received, is not a universal application. As there is no question raised in the present case on such a proposition, the cited case is not applicable to the issues before us.

It seems obvious why rescission was not claimed by appellant in its original complaint and in its two amended complaints. Notice of rescission must be given promptly after discovery of fraud. Here, appellant waited for 21 months after the completed execution of the contract and the completion of the transaction, with full

knowledge of all the facts, before filing suit; and the first claim of fraud was not made until it was required to file more definite allegations in its amended complaint—more than two years after notice of the alleged fraud. No rescission was ever claimed in the pleadings, and no claim of rescission has ever been made in this case. Furthermore, it is not difficult to arrive at a reasonable conclusion why appellant did not claim damages for fraud on the theory of affirmance of the contract. While the allegations of fraud in the complaint are vague and indefinite, in disregard of Rule 9(b) of the Federal Rules of Civil Procedure, nevertheless, the most favorable construction to be given them, is that the fraud asserted against appellee, consisted of selling the repossessed cars in Ohio, rather than in Michigan, and in so intending at the time of the execution of the contract. In a suit for damages for fraud, these facts, if proved, would result in a relatively insignificant recovery for damages, if any, compared to a judgment based on wrongful conversion and destruction of appellant's business.

It may be concluded that appellant, desiring neither to rely upon rescission, because of obstacles of proof, nor upon affirmance and damages, because of paucity of recovery, deliberately chose to base its case on the ground that the repossession of its property by the appellee was a conversion; and that the agreement releasing appellee from all claims arising out of the repossession, was void ab initio because of appellee's fraud. This, in effect, was stated as appellant's claim in one of its amendments to the amended complaint.

A contract induced by fraud is voidable at the option of the party defrauded, and requires an affirmative action on his part to relieve him of the obligation. Brenard Mfg. Co. v. Stuart, 212 Ky. 97, 278 S.W. 586. Such a contract is not void, but must be treated as valid until the party having the right of rescission takes some action to accomplish rescission. Andrew v. American Savings Bank & Trust Co., 219 Iowa 921, 258 N.W. 911. A contract of settlement for damages growing out of a tort, procured by fraud, is voidable only and not void. South Bend & Mishawaka Gas Co. et al. v. Jensen, 182 Ind. 557, 105 N.E. 774; and a release, procured by fraud, of all claims arising out of a contract, is not void but voidable. Cress v. Ivens, 163 Iowa 659, 145 N.W. 325. While a contract executed in consideration of a promise

which one of the parties does not intend to perform, may be rescinded, nevertheless, until rescinded or set aside, the contract determines the rights of the parties. Baker v. Baker et al., 54 App.D.C. 214, 296 F. 961.

The settlement agreement was not void, but voidable. Because there was no pleading, or claim of rescission on the part of appellant, it must be held that the admitted agreement of release of all claims growing out of the action of appellee in repossessing the property, on its face, was a complete defense to the claim for conversion based upon the same repossession. There was no error on the part of the District Court in entering judgment, on the pleadings, of no cause of action against appellant. Appellant's defense to the counterclaim of appellee was predicated and depended solely upon the claim of wrongful conversion. With conversion removed from the case, there was no defense to the motion for summary judgment on appellee's sworn claim, and judgment, therefore, was properly entered on the counterclaim.

The judgment of the District Court is affirmed.